# Godfrey Snydacker, Impleaded, etc.

## *v.*

## Sarah Brosse.

51  357
79a 268

51   357.
196  ⁶566

51  357
110a ⁹454

51  357
114a ⁹485

1. Officer—*no authority to break into defendant's premises—to execute civil process.* It is a well established rule of law, that no officer has the legal authority to break an outer door, or other outside protection to a person's house, for the purpose of executing civil process.

2. Same—*arrest on civil process—how effected.* Even to arrest a defendant on civil process, the officer must corporally seize or touch the defendant's body, and thus render him a prisoner, before he can justify the breaking and entering his house to retake him. Otherwise he has no such power, but must watch the opportunity to arrest him.

3. Same—*of the execution of process against the goods of a defendant—officer can not break into the house.* And in the execution of civil process against the goods of a defendant, an officer is equally powerless to force an entrance into the defendant's house for the purpose of seizing them.

4. Same—*having effected an entrance peaceably—may then break open inner doors—after request and refusal.* But, having effected an entrance into the defendant's house peaceably, an officer may, after a request and refusal, break open any inner doors belonging to defendant, in order to take the goods.

5. Same—*may force an entrance—to arrest a party charged with a felony.* But the rule is otherwise in executing process for the arrest of a person charged with a felony. In such case, the officer is justified in breaking open doors, if necessary, to make the arrest.

6. Process—*can not be executed by a person in his own favor.* The law does not authorize a person to execute process in his own favor.

7. Officer—*liability of—for abuse of process.* When an officer armed with a writ abuses it, by the commission of any act not warranted by the process, he thereby becomes a trespasser *ab initio,* and he is liable not only for the property taken by him, but also for any damage which was the immediate result of his acts.

8. Process—*for abuse of, when by the advice of plaintiff—both plaintiff and officer liable.* Even in a case where all the proceedings are regular, a plaintiff is equally liable with the officer, if he command or advise the abuse of process; although, otherwise, he would not incur liability.

9. Estoppel. An affidavit in replevin, made by the wife, stated that the property belonged to her husband. In an action afterwards brought by her,

for damage done to such property, it was objected, that, by reason of such affidavit, she was estopped from maintaining the suit. *Held*, that although the affidavit was strong evidence to prove that the property belonged to her husband, yet it could not be considered as conclusive; that she might explain the affidavit, as to the ownership of the property, and it was for the jury to determine the sufficiency of such explanation.

APPEAL from the Superior Court of Chicago.

The opinion states the case.

Messrs. ROSENTHAL & PENCE, for the appellant.

Mr. A. N. WATERMAN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellant, in July, 1868, recovered a judgment, before a justice of the peace, for $100, against appellee and one Richards. An execution was issued thereon, and in September of that year, Comfort, a constable, and one of the defendants below, levied the execution upon a portion of appellee's household goods, and took charge of them. Appellee was, at the time, conducting business as a *feme sole*, lived alone, and as an unmarried woman, and acquired the property levied upon, while thus living separate and apart from her husband, with whom she had not lived for about two years. They, it seems, had ceased to live together by mutual consent.

After the levy was made she filed an affidavit before a justice of the peace, in which she claimed the goods belonged to her husband, and caused them to be replevied in his name, and Snydacker and Comfort were made defendants. On a trial of that case a judgment was rendered in favor of the defendants, and the goods ordered to be returned, and a writ was issued therefor. Comfort took the writ, went to the house, and carried away the property levied upon, and some articles which had not been seized on the execution.

Some two or three days after the goods were removed under the writ of *retorno habendo*, appellee's attorney called upon Snydacker, who compromised his judgment by receiving $80, and then giving an order on Comfort to return the property to appellee, which he did, except a blanket and a comfort, which it is claimed were taken but not returned.

It appears that the constable used great expedition in executing this writ, only a few hours intervening after the rendition of the judgment in the replevin suit, until he had, in the absence of appellee, entered her house and seized the goods and carried them away.

It is claimed that Comfort executed the writ in the most reckless manner, after entering the house, by handling the goods in a rough and improper manner, and carrying them away exposed to a severe rain, whereby they were greatly injured; also, that he forced open an outer door, or a window, to effect an entrance. There is evidence tending to prove that this writ was executed in the manner charged, and the jury have so found. It also appears, from the quantity of household property removed, that her business of a boarding house keeper was suspended.

To recover damages for the wrongful entry into the house, and the abuse of power, if any was possessed, by Comfort, after making the entry, this suit was brought, and on a trial in the court below, the jury found a verdict for $900 damages, from which Snydacker has prosecuted this appeal.

The defense interposed was, the general issue, and a justification under the original writ of *fieri facias*, and the writ of *retorno habendo*.

It is a uniformly recognized rule of the common law, that no officer has the legal authority to break an outer door, or other outside protection to an individual's house, for the purpose of executing civil process. Even to arrest a defendant on civil process, the officer must corporally seize or touch the defendant's body, and thus render him a prisoner, before he can justify the breaking and entering the defendant's house to

retake him; otherwise he has no such power, but must watch his opportunity to arrest him; for every man's dwelling house is looked upon by the law as his castle of defense and asylum, wherein he should suffer no violence. 3 Black. Com. 288. And in the execution of civil process against the goods of a defendant, an officer is equally powerless to force an entrance into the house of the defendant for the purpose of seizing them. Blackstone says, a sheriff may not break open any outer doors to execute either a *fieri facias* or a *capias ad satisfaciendum;* but he must enter peaceably, and may then, after a request and refusal, break open any inner doors belonging to the defendant, in order to take the goods. 3 Bl. Com. 417. And what is said of these writs is believed to be true of all civil process; and it follows, that the writ of *retorno habendo* conferred no right on any constable to break an outer door or a window to effect an entrance into appellee's house. On a warrant for the arrest of a person charged with a felony it is otherwise, as the officer may then break open doors, if necessary, to make the arrest. 4 Bl. Com. 292.

In this case, however, there is a fatal objection to the justification, by Comfort, under the writ of *retorno habendo*, as it was in favor of himself and Snydacker. We are aware of no case in which the law authorizes a person to execute process in his own favor. To permit such a course of practice would lead to great oppression, wrong and irregularity. The law has wisely entrusted the decision of disputes between citizens to persons wholly disinterested, and free from bias and the acrimony of feeling so frequently, if not uniformly, engendered by litigation; and the same is equally true of the persons selected to execute the process necessary to the adjustment of such disputes. The law will not entrust the power to a person to render or execute a judgment in his own favor. The writ of *retorno habendo*, therefore, could form no justification for any act done under it by Comfort, whatever it might have been to any other constable having no interest in the litigation.

But we have seen that it would have justified no one in breaking outer doors to execute it.

We now come to consider the question, whether the constable was justified, under the *fieri facias*, in forcibly entering the dwelling of appellee, by breaking the doors or windows, for the purpose of seizing the goods. We have seen that he possessed no more power to do so under this than the other. Under it he could, no doubt, without the writ of *retorno habendo*, have seized the goods under the first execution, or even by virtue of the first levy. Doing so, he should have gained a peaceable entrance into the house, and if inner doors had been closed so he could not seize the goods, then he should have demanded that they be opened, and failing to be opened, he might break them and seize the goods. To this extent the *fieri facias* would have justified him. But even then he could not use the writ as a mere pretext for wanton and unnecessary injury, or only for malicious purposes.

Although Comfort was armed with the writ, yet, if he abused it, by breaking open an outer door or window, or committing any other act of trespass not warranted by the process, he thereby became a trespasser *ab initio*. 1 Chit. Pl. 185. If, then, Comfort committed a trespass in entering the house, he is liable as a trespasser, and must respond for the damages ensuing from his unlawful act. It would, therefore, follow, if he so entered, that he is liable for any damage he may have done to the property returned, or for the value of any which he may have wrongfully detained and failed to return, as well as for any damage which was the immediate result of his acts.

We now come to consider the question, whether a plaintiff in execution is liable for the abuse of process by an officer. The books lay it down as a rule, that, when the court has jurisdiction, but the proceeding is irregular, trespass against the attorney and the plaintiff is the proper remedy, as, where the judgment has been set aside for irregularity, trespass is the appropriate action for any act done under it. 1 Chit. Pl. 184. And when the court has no jurisdiction over the subject

matter, trespass is the proper form of action against all the parties, for acts done under such proceedings. Ib. 182. And there can be no doubt that a plaintiff, in a case where all the proceedings are regular, is equally liable with the officer, if he command or advise the abuse of process; although otherwise he would not incur liability. He, like any one else, must be held responsible for aiding, advising or abetting an officer to abuse his power.

In this case, however, there is no pretense that the justice of the peace did not have jurisdiction of both the subject matter, and the person of appellee, nor is it contended that the execution on that judgment was not in all respects regular. This being so, it was necessary to prove that Snydacker advised, directed or encouraged the abuse of the process complained of by appellee, or knowing of its abuse, and for his own benefit ratified it; and this should have been proved by legitimate evidence. But it was not a legitimate mode of proving that Snydacker was a party to the trespass, by introducing evidence of what Comfort said in reference to Snydacker's connection with the matter, when he was not present. Richards swore that Comfort stated to him, in the absence of Snydacker, that the latter told the former what he should do in reference to the levy; and appellee testified that Comfort said to her that Snydacker said he would take the law into his own hands, but that the latter was not present at this conversation. This evidence was admitted against the objections of appellant. This was but hearsay evidence, and was clearly inadmissible. It no doubt made a strong impression upon the minds of the jury, and may have operated prejudicially to appellant. In its admission the court erred.

Appellee's sixth instruction should have been modified or refused. It nowhere distinguishes between the lawful and unlawful acts of Comfort, nor does it leave it to the jury to find whether Comfort had committed a trespass, or had abused the process. This may have tended to mislead the jury.

It is urged, that appellee, having sworn, in her affidavit, that the property was her husband's when she commenced the replevin. suit, is estopped from now suing for any damage to it. Such an affidavit is, no doubt, strong evidence to prove that the property belonged to her husband, but at the same time it is not conclusive. She might, if she could, explain the affidavit, and show that the property belonged to her;. and it is for the jury to say, from all the circum-stances, whether she succeeded in the proof.

As the case must go to another jury, we deem it improper to discuss the question whether the damages are excessive.

For the errors indicated, however, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*