# PALMER v. KING.

REPLEVIN; PROCESS; EXECUTION; ASSAULT; BOND.

1. The common law furnishes the rule of procedure in executing writs of replevin in the District of Columbia, there being no statute on the subject.

2. Under the rules of common law an officer may, in serving civil process, enter through an open window as well as through an open door.

3. The restraints in respect to the use of force by an officer in serving civil process generally, apply to the service of a writ of replevin.

4. The remedy of replevin, though formerly used only for the recovery of chattels wrongfully taken on a distress, is now an ordinary statutory proceeding to adjudicate rights to title and possession of personal property. (Citing *Corbett* v. *Pond,* 10 App. D. C. 17.)

5. The rule of common law, as deduced from the cases, seems to be that an officer, in executing a writ of replevin, may not break an outer door or window of a dwelling to gain entrance to seize the property of the occupant or other person rightfully domiciled therein; but he may enter either an open outer door or window, provided it can be accomplished without committing a breach of the peace, and he may then, after a request and refusal, break open any inner doors belong-

ing to the defendant, in order to take the goods. And the further rule is deducible from the cases, that when an officer, in the execution of a writ, finds an outer door or window slightly ajar, but not sufficiently so to admit him, he may open the door or window, provided he does not find it obstructed, but if it is fastened or obstructed so as to require force to overcome the obstruction, he may not use such force, for such an entrance would constitute a breaking.

6. An assault which will sustain an action on a marshal's bond is committed when, in the execution of a writ of replevin, he forcibly overcomes the resistance offered by the occupant of a house to his entry through an open window for the purpose of serving the writ.

No. 2576. Submitted December 4, 1913. Decided February 2, 1914.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action on the bond of the United States Marshal.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellee Sarah L. Ernestine King, filed a declaration in the supreme court of the District of Columbia against defendants Aulick Palmer, United States marshal for the District of Columbia, and the United States Fidelity & Guaranty Company. The action is for damages upon the bond of the marshal and his surety to recover for an alleged breach of a covenant of the bond, which provided that the marshal, by himself and his deputies, shall faithfully perform all the duties of his office. The alleged breach grew out of the execution of a writ of replevin issued in a suit against one Allen S. King, husband of plaintiff, directed to the marshal, commanding him to seize a certain sewing machine, which, it afterwards developed, belonged to plaintiff.

It appears that the writ was placed in the hands of two of the marshal's deputies, who proceeded to the residence of plaintiff. One of the deputies rang the basement door bell, and plaintiff answered through an adjoining basement window, when the deputy stated that he had some legal papers for Mr. King,

to which plaintiff replied that her husband was not at home, and suggested that the papers be left with her to deliver to him. She then opened the window, and the deputy started to climb through it. Plaintiff stood in front of the window, placed her hands on the shoulders of the deputy, and vigorously resisted his efforts to get through the window. He forced his way through, and, in doing so, pushed plaintiff against a shelf, whereby she sustained the injuries of which she complains. The sewing machine was in the front basement room and in plain view of any one looking through the window.

Defendants filed a demurrer to the declaration, which was overruled. Thereupon they pleaded performance of the conditions of the bond, upon which plea issue was joined. From a verdict and judgment in favor of plaintiff, defendants have prosecuted this appeal.

*Mr. Clarence R. Wilson* and *Mr. Reginald S. Huidekoper,* for the appellants:

1. The entry complained of as trespass was lawful, as there was no "breaking" of the house of the appellee. *Lee* v. *Gansel,* Cowp. pt. 1, p. 1; *Nixon* v. *Freeman,* 5 Hurlst. & N. 647, 653; *Nash* v. *Lucas,* L. R. 2 Q. B. 590; *Sandon* v. *Jervis,* 96 E. C. L. 935; *Genner* v. *Sparks,* 6 Mod. 173; *Anonymous,* 7 Mod. 8; *White* v. *Wiltshire,* 2 Rolle Rep. 138; *Curtis* v. *Hubbard,* 1 Hill, 336; Freeman, Executions, § 256; 4 Bl. Com. 226; 2 Russell, Crimes, 901; *State* v. *Kennedy,* 16 Mo. App. 287; *Ray* v. *State,* 66 Ala. 281; *McGrath* v. *State,* 25 Neb. 280; *Timmons* v. *The State,* 34 Ohio St. 426.

2. Even though the entry be considered a forcible breaking, the deputy marshal was not guilty of a trespass, because in the execution of the writ of replevin there is, in the officer executing the writ, the right to break and forcibly enter. *Semayne's Case,* 5 Coke, 91, 1 Smith, Lead. Cas. 114; *Jones* v. *Herron,* 12 Pa. Co. Ct. 183; *Howe* v. *Oyer,* 50 Hun, 559; *Keith* v. *Johnson,* 1 Dana, 605; *De Graffenreid* v. *Mitchell,* 3 McChord, 506; Morris, Replevin, p. 114; Wells, Replevin, § 287, p. 162.

*Mr. Henry H. Glassie* and *Messrs. McNeill & McNeill,* for the appellee:

1. The sheriff has no authority to break and enter a dwelling house for the purpose of executing a writ of replevin even after demand and refusal. *Kelley* v. *Schuyler,* 20 R. I. 432, 44 L.R.A. 435; *State ex rel. McPherson* v. *Beckner,* 132 Ind. 371; *State* v. *Armfield,* 2 Hawks, 246, 11 Am. Dec. 762; *Curtis* v. *Hubbard,* 4 Hill, 437; *Hillman* v. *Edwards,* 28 Tex. Civ. App.; *Gusdorf* v. *Duncan,* 94 Md. 160.

2. An entrance sufficient to constitute a breaking in burglary will render the officer guilty of trespass. *Curtis* v. *Hubbard,* 1 Hill, 336, 40 Am. Dec. 292.

*Mr.* Justice VAN ORSDEL delivered the opinion of the Court:

The sole question presented by the appeal is whether or not the deputy marshal exceeded his authority in forcing an entrance through the open window, in spite of plaintiff's resistance, in order to execute the writ of replevin? That an assault was committed is settled by the verdict of the jury. It must be conceded that the deputy had no right, even in his official capacity, to commit an assault upon plaintiff, unless it appears that he had a legal right to force his way through the open window in disregard of her opposition, when, if she sustained injuries, it would be her misfortune, and not the wrong of the officer. The question presented does not involve the right of an officer to enter a dwelling through an open window where there is no resistance offered, and where the entrance involves no element of force. The suit is not for trespass *quare clausum fregit,* but for trespass upon the person of the plaintiff.

Since we have no statute defining the powers of officers in executing a writ of replevin, the common law furnishes the rule of procedure in this District. At common-law, as to the right of an officer to enter a dwelling in the service of civil process, no distinction seems to exist between entrance by outer windows and outer doors. *Lee* v. *Gansel,* 1 Cowp. pt. 1, p. 1; Lofft, 374;

*Nixon* v. *Freeman,* 5 Hurlst. & N. 647, 29 L. J. Exch. N. S. 271, 6 Jur. N. S. 983, 2 L. T. N. S. 361, 15 Eng. Rul. Cas. 315; *Nash* v. *Lucas,* L. R. 2 Q. B. 590, 8 Best & S. 531. In other words, it is not important that the entrance here was accomplished through an open window, if, under the same circumstances, it could have been accomplished lawfully through the door.

Counsel for defendants insist that the writ of replevin is an exception to the law generally applicable to the execution of civil process. It is urged that, where a specific chattel is to be recovered, the officer is not obliged to respect the peace and protection which the law secures to the householder. In a few instances, where this distinction has apparently been recognized, writs for the seizure of a specific chattel have been confused with writs of seizin or *habere facias possessionem* for the recovery of specific real property. In *Semayne's Case,* 5 Coke, 91; 1 Smith, Lead. Cas. 238, it is pointed out that, in respect of the execution of such writs against real property, there has been an adjudication adverse to the title of the holder, and the law no longer accords him any special privilege or security in it. "After judgment it is not the house in right and judgment of law of the tenant or defendant."

The authorities generally, with relation to the powers conferred at common law upon an officer in execution of the writ of replevin, go back to the resolutions in *Semayne's Case.* The following quotation from what was there decided is important: "But it was resolved, that it is not lawful for the sheriff (on request made and denial), at the suit of a common person, to break the defendant's house, sc. to execute any process at the suit of any subject; for thence would follow great inconvenience, that men as well in the night as in day should have their houses (which are their castles) broke, by color whereof great damage and mischief might ensue; for by color thereof, on any feigned suit, the house of any man, at any time, might be broke when * * * [he] might be arrested elsewhere, and so men would not be in safety or quiet in their own houses. * * * 5. It was resolved, that the house of any one is not a castle or

privilege but for' himself, and shall not extend to protect any person who flies to his house, or the goods of any other which are brought and conveyed into his house to prevent a lawful execution, and to escape the ordinary process of law; for the privilege of his house extends only to him and his family, and to his own proper goods, or to those which are lawfully and without fraud and covin there; and therefore in such cases, after denial or request made, the sheriff may break the house; and that is proved by the statute of Westm. 1, chap. 17, by which it is declared that the sheriff may break a house or castle to make replevin, when the goods of another which he has distrained are by him [*i. e.*, the distrainer] conveyed to his house or castle, to prevent the owner to have a replevin of his goods; which act is but an affirmance of the common law in such points. But it appears there, that before the sheriff in such case breaks the house, he ought to demand the goods to be delivered to him: for the words of the statute are, after that the cattle shall be solemnly demanded by the sheriffs, etc."

This makes no exception of the writ of replevin. It expressly holds that an officer is not justified in breaking into a dwelling to seize the property of the owner upon civil process. The exception pointed out is where the goods of another than the householder are brought into his house to prevent lawful execution and to escape process of the law. In such case the process is not against the owner of the dwelling, and the privilege and security which extend to him and his family are not invaded by the breaking, after a solemn demand for admission has been made by the officer.

The statute of Westm. 1, chap. 17, only related to the exception pointed out in *Semayne's Case.* The act was said in that case to be but an affirmance of the common law. From this statement it would seem that, at common law, the peace and security of one's castle never did extend to the protection of a person who took his chattels there for the express purpose of making it a refuge from the execution of civil process. The statute was enacted to restrict the private remedy of distress, and to furnish the tenant relief from a wrongful and excessive distraint.

by his landlord. The remedy of replevin, until quite recent times, was only used for the recovery of chattels taken wrongfully upon a distress. 3 Bl. Com. 146. It has now become an ordinary statutory proceeding to adjudicate rights to the title or possession of personal property. In *Corbett* v. *Pond,* 10 App. D. C. 17, 25, this court said: "And with us it is so greatly regulated by statute (D. C. Rev. Stat. secs. 814–824) that it may be said to have wholly lost any common-law character which it may have had, and to depend for its efficacy entirely upon statutory provisions."

The rule of the common law in respect of the execution of the writ of replevin, as disclosed in *Semayne's Case,* has been approved in many English cases. In *Lee* v. *Gansel,* Cowp. pt. 1, p. 1, Lord Mansfield, after holding that the entrance of an officer through an open outer door or window to execute civil process must be quiet and peaceable, said: "The sound maxim of policy is this, 'That a greater evil should be avoided for a less, and that a less good should give way to a greater.' The outer door, therefore, or window of a man's house, says the law, shall not be broken open by process. This has been long and well understood. The ground of it is this, that otherwise the consequences would be fatal: for it would leave the family within, naked and exposed to thieves and robbers. It is much better, therefore, says the law, that you should wait for another opportunity than do an act of violence which may probably be attended with such dangerous consequences."

The rule of the common law, as deduced from the cases, seems to be that an officer, in executing a writ of replevin, may not break an outer door or window of a dwelling to gain entrance to seize the property of the occupant or of a person rightfully domiciled therein. He may enter either an open outer door or window, provided it can be accomplished without committing a breach of the peace; he may then, after a request and refusal, break open any inner doors belonging to the defendant, in order to take the goods. 3 Bl. Com. 417; *Semayne's Case,* 5 Coke, 91, 1 Smith, Lead Cas. 238. We think a further reasonable rule is deducible from the cases, that when an officer, in the exe-

cution of a writ, finds an outer door or window slightly ajar, but
not sufficiently so to admit him, he may open the door or win-
dow, provided he does not find it obstructed, but if it is fastened
or obstructed so as to require force to overcome the obstruction,
he may not use such force, for such an entrance would consti-
tute a breaking.

This rule has been recognized generally in this country where
the common law has not been superseded by statute.   In *Pretty-
man* v. *Dean,* 2 Harr. (Del.) 494, the court, considering an or-
dinary case of replevin, said:   "The sheriff has a right to enter
a house peaceably, where he finds the house open, for the pur-
pose of executing a replevin.   Being in, he has the right to exe-
cute the writ; if property be concealed, he has the right to
break open inner doors, and generally use such force as is neces-
sary to enable him to obey the command of his writ."   To the
same effect are *Kelley* v. *Schuyler,* 20 R. I. 432, 44 L.R.A. 435,
78 Am. St. Rep. 887, 39 Atl. 893; *State ex rel. McPherson* v.
*Beckner,* 132 Ind. 371, 32 Am. St. Rep. 257, 31 N. E. 950;
*Swain* v. *Mizner,* 8 Gray, 182, 69 Am. Dec. 244; *Snydacker* v.
*Brosse,* 51 Ill. 357, 99 Am. Dec. 551; 3 Freeman, Executions,
¶ 468.

But it is sought by counsel for defendants to make a distinc-
tion between breaking and forcible entry.   It is urged that, in-
asmuch as the officer found the window open, and, in order to
enter through the open window, only used sufficient force to
overcome the resistance of plaintiff, it cannot be denominated
a breaking.   We are not impressed by this contention.   The
deputy, in order to enter, was compelled to commit a breach
of the peace, and this was forbidden at common law.   We are
not disposed to make any distinction between a case where an
officer finds a door or window slightly ajar, but obstructed; and
where he finds it open, but the entrance obstructed by the law-
ful occupant of the dwelling, or otherwise, so as to require the
exercise of force to overcome the obstruction.

In *State ex rel. McPherson* v. *Beckner,* 132 Ind. 371, 32 Am.
St. Rep. 257, 31 N. E. 950, where an officer put his foot be-
tween the door and the jamb, thus preventing the owner from

closing it, and then forced the door open against the resistance of the owner, it was held to constitute a breaking. In *State* v. *Armfield,* 2 Hawks, 246, 11 Am. Dec. 762, a constable, having a writ of fi. fa. against the property of one Patterson, went with the defendant Armfield to Patterson's house to make the levy. A member of the family, observing their approach, rushed into the house and attempted to shut the door, but, before it was entirely closed, the constable pushed it open and entered the house. In the opinion the court said: "The law is clearly settled that an officer cannot justify the breaking open an outward door or window, in order to execute process in a civil suit; if he doth, he is a trespasser. A man's house is deemed his castle, for safety and repose to himself and family; but the protection thus afforded would be imperfect and illusive if a man were deprived of the right of shutting his own door when he sees an officer approaching to execute civil process. If the officer cannot enter peaceably before the door is shut, he ought not to attempt it, for this unavoidably endangers a breach of the peace, and is as much a violation of the owner's right as if he had broken the door at first." So, in the present case, the action of the officer in overcoming the resistance of plaintiff at the open window to gain entrance was as much a violation of plaintiff's right as if he had broken open the window for the same purpose.

The judgment is affirmed, with costs.        *Affirmed.*