## Minnie V. Connor, Defendant in Error, v. Louis Greenberg, Plaintiff in Error.

## Gen. No. 19,190.

1. SHERIFFS AND CONSTABLES, § 78*—*when replication to plea of authority sufficient.* In action in trespass where defendant pleaded that he had a writ of *fieri facias*, that the outer door of plaintiff's house was open at the time he entered, to which plaintiff replied, admitting defendant had the writ but that he nevertheless committed the trespass as alleged in the declaration *held*, that it was unnecessary for plaintiff to specifically charge in the replication that defendant broke the outer doors, but that by replying as to the abuse to defendant's plea of authority she stated matter in confession and avoidance.

2. PLEADING, § 183*—*when defendant may demur specially to replication.* In action in trespass where a replication *de injuria* is insufficient, defendant may demur specially.

3. PLEADING, § 466*—*when defect in replication aided by verdict.* A defect in a replication *de injuria* in an action of trespass is aided by verdict.

4. SHERIFFS AND CONSTABLES, § 80*—*when error in admission of evidence not prejudicial.* Any error of the trial court in an action, in trespass, wherein it was alleged that a constable broke the outer doors of a residence to serve a writ, in allowing plaintiff to testify that she had no recollection of any service of a summons on her in the action wherein the writ was served, was not prejudicial, where the trial court gave instructions which were predicated upon the assumption that defendant had a valid writ of execution.

5. TRESPASS, § 11*—*what constitutes a dwelling house.* In an action in trespass, a boarding house is a dwelling house where plaintiff resides therein.

6. SHERIFFS AND CONSTABLES, § 83*—*when instruction as to right of officer breaking in door of dwelling to serve writ sufficient.* In an action in trespass against a constable serving a writ and breaking into a dwelling house, inner doors in a vestibule leading into a house are outer doors of the house even though there may be outer doors to the vestibule, and an instruction with reference to breaking in the outer door need not designate which of such above doors were inner or outer.

7. SHERIFFS AND CONSTABLES, § 83*—*when instruction as to measure of damages for injury to business because of unlawful entry by*

*constable sufficicnt.* Where in an action in trespass for unlawful entry of constable serving a writ, it appears that the officer unlawfully entered plaintiff's house, it is proper to instruct the jury that if they find for·plaintiff and if they find that plaintiff had an established business which was injured or destroyed as a proximate result of the acts of defendant in taking plaintiff's goods they may assess damages proximately accruing from such loss of business.

8.· Sheriffs and constables, § 83*—*when instruction in action against constable for breaking into a house to serve a writ not prejudicial.* Where in action in trespass against a constable for breaking into a house to serve a writ, a portion of an instruction complained of is predicated upon the assumption that defendant made a peaceable entry into plaintiff's house, whereas the jury found in one of their special findings that he broke the outer door thereof, defendant could not have been prejudiced by such instruction.

9. Sheriffs and constables, § 80*—*when evidence sufficient to sustain verdict.* In an action against a constable for damages for breaking into a house to serve a writ on plaintiff, evidence *held* sufficient to sustain a verdict for plaintiff.

Error to the Circuit Court of Cook county; the Hon. Henry V. Freeman, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed February 24, 1916.

**Statement by the Court.** This action in trespass was commenced in the Circuit Court of Cook county on April 6, 1905. For various causes a trial was not had until March, 1909. At the conclusion of the trial at the request of the defendant four special interrogatories in writing were submitted to the jury to be answered, as follows:

"A. Did Louis Greenberg commit an assault upon the plaintiff, Minnie Connor?

"B. Did Louis Greenberg have an execution against Minnie Connor, and in favor of Clark & Doran?

"C. Did Louis Greenberg imprison or arrest Minnie Connor?

"D. Was the outer door broken by Constable Louis Greenberg?"

The jury, on March 25, 1909, returned a general verdict finding the defendant guilty and assessing plaintiff's damages at the sum of $3,000, and in their special

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

findings answered all of said interrogatories in the affirmative. Defendant's motion for a new trial was not finally passed upon until February 3, 1910, at which time that motion and his motion in arrest of judgment were overruled and the court entered judgment upon the verdict.

From the judgment defendant prayed an appeal and perfected the same in this court, but on July 10, 1912, said appeal was dismissed by this court upon his motion. He having been arrested on a *capias ad satisfaciendum* issued on said judgment, and his petition for release from custody under the Insolvent Debtor's Act having been dismissed by the County Court of Cook county, he prayed an appeal from that judgment of dismissal to this court, and on November 10, 1914, said judgment of the County Court was affirmed. (*Greenberg v. Connor,* 189 Ill. App. 419.) In the meantime, on February 1, 1913, he sued out this present writ of error to review said judgment of the Circuit Court, and the cause was continued from term to term for want of service on plaintiff (defendant in error). On January 14, 1915, on defendant's motion the writ of error was made a *supersedeas,* defendant having filed a bond with surety in the sum of $5,000, and on May 11, 1915, publication having been made, plaintiff entered her appearance in this court.

The declaration consists of four counts. The first count alleges, in substance, that defendant, on April 20, 1904, "with force and arms, etc., broke and entered a certain dwelling house of the plaintiff," and stayed and continued therein, making a great noise and disturbance, for the space of three days; that defendant "forced and broke open and broke to pieces and damaged the outer doors" of said dwelling house, and "broke to pieces, damaged and spoiled divers locks, staples and hinges" belonging to said doors and wherewith the same were fastened; that defendant, also,

during said time, with force and arms, "seized and took divers goods and chattels" (here are specifically mentioned more than 100 articles including one piano, several oriental rugs, household furniture and $52 in money) "being the goods of plaintiff then found and being in said dwelling house and being of the value of $2,500, and carried away the same and converted and disposed thereof to his own use;" by means whereof plaintiff and her family were not only greatly disturbed in the peaceable possession of plaintiff's dwelling house but plaintiff was "hindered and prevented from carrying on and transacting therein her necessary affairs and business and has  *   *   *  been thereby deprived of her said dwelling house from hence hitherto, and  *   *   *  the business of plaintiff, being that of a boarding house keeper, was completely broken up and destroyed."

The second count alleges that on the date aforesaid defendant made an assault upon plaintiff and beat and illtreated her, and imprisoned her without any reasonable cause for the space of seven hours. The third count charges, in substance, that defendant assaulted plaintiff, seized her and with great violence dragged her about and struck her, and also forced her to go out on the public streets then and there in custody, whereby she was not only bruised and wounded but was exposed to public disgrace and injured in her standing and reputation. The fourth count charges an assault and battery by defendant.

The defendant filed a plea of the general issue to all four counts, and also a special plea "as to the *first* count of plaintiff's declaration and as to the alleged wrongful taking of the property hereinafter named," in which he alleged, in substance, that on February 16, 1904, Clark & Doran sued out of the justice court of W. D. Wilcox, a justice of the peace in said Cook county, a writ of *fieri facias,* commanding any con-

stable of said county that of the goods and chattels of said plaintiff there should be made the sum of $133.20, and $4.50 costs, within seventy days; that defendant was then and thereafter a constable of said county and said writ was delivered to him to execute; that afterwards and before the return day of said writ, on April 20, 1904, defendant as such constable "peaceably and quietly entered into the said dwelling house, in which, etc., the outer door thereof being then open," and seized and took in execution the following goods and chattels of plaintiff, viz.: "1 piano, 1 piano stool, 2 rugs 9 x 12, two wardrobes, one hat rack and 2 small rugs," the same being in said dwelling house and liable to be seized and taken by virtue of said writ; that in so doing he necessarily and unavoidably made a little noise in said dwelling house but did no unnecessary damage to plaintiff; and that afterwards, after due notice given according to law, he sold said goods and chattels, and satisfied said judgment and costs.

To this special plea of justification plaintiff filed a replication in which she alleged that "although true it is that said writ of *fieri facias* was issued and delivered to the defendant as such constable * * * nevertheless * * * the plaintiff says that the defendant, at the time when, etc., of his own wrong and without the residue of the cause in that plea alleged, committed the trespasses in said declaration mentioned, in manner and form as the plaintiff has hereinabove complained against the defendant," etc.

The testimony of plaintiff and her witnesses disclosed, in substance, the following facts: On and prior to April 20, 1904, plaintiff conducted a boarding and lodging house on Ashland boulevard, between Jackson and Van Buren streets, Chicago. There were fifteen rooms in the house and ten boarders. Plaintiff's net income from her boarders and roomers at the time was about $100 per month. At the front entrance to the

house there were two permanent doors. They were both "double doors," one set opening into a vestibule and the other set opening from the vestibule into the main hall of the house. Outside of the first mentioned double doors were temporary double "storm" doors which opened outwards. About 8:30 o'clock on the morning of April 20, 1904, plaintiff was standing on the front porch. The storm doors were open. Both sets of double doors were locked. Defendant, accompanied by William Snyder, another constable, came upon the porch where plaintiff was. Other men, assistants of defendant, were on the sidewalk. Defendant stated to plaintiff that he had an execution against her in favor of Clark & Doran for over $133, demanded that plaintiff open the doors and let him inside of the house, took hold of plaintiff's arm and further stated that she was his prisoner. Upon plaintiff's refusal to open the doors defendant directed Snyder and his other assistants to break in the doors, and they first broke open the double doors leading into the vestibule. In the meantime, at plaintiff's request, her daughter, standing inside in the hall, had "put the chain on" the doors opening from the vestibule into said hall. Defendant's assistants afterwards by pushing a ladder against said doors, succeeded in breaking open the same and in so doing broke off a portion of one of said doors and broke said chain. After gaining admission into the hall defendant again took hold of plaintiff's arm and again stated that she was under arrest, and demanded that $200 be paid him, otherwise he would carry away the household effects and sell them. Subsequently plaintiff paid defendant $40 and received from him a written receipt therefor. Plaintiff then requested that she be allowed to go down town and see her attorney and endeavor to procure more money. Defendant refused to permit her to go except in the custody of Constable Snyder, who accompanied her in a buggy to said attorney's office. In the inter-

view there had Snyder told said attorney that plaintiff was under arrest, that both defendant and he had executions and that if money was not forthcoming they were going "to clean out that place," and referred him to defendant for further information. Snyder accompanied plaintiff on the return to her home, where plaintiff again saw defendant and asked for additional time to procure more money. Defendant said he would put in a custodian at $10 per day, which he did for one day. Plaintiff paid $12 in all to the custodian. On the afternoon of the following day defendant, accompanied by Snyder and other men, again came to plaintiff's home. Two large moving vans of the Livingston Express and Storage Company were drawn up in front of the house, and during the afternoon there were taken and carried away in said vans and in buggies 100 articles of household furniture belonging to plaintiff. As one witness stated, "they took almost everything." Plaintiff, after enumerating various chattels taken, testified that the fair market value of the same at the time was $2,600. This testimony as to value was not contradicted. No part of the property was returned to plaintiff and she did not continue in her business as a boarding house keeper.

The defendant claimed the protection of the execution issued by W. D. Wilcox, a justice of the peace, on a judgment against plaintiff and in favor of Clark & Doran for $133.20 and costs. This paper was in the possession of the defendant and on the trial was offered in evidence by him. It does not appear to have ever been returned to said justice. On the back of the paper is a statement over defendant's signature that on April 20, 1904, he levied on certain specific personal property of plaintiff (mentioning the same 9 articles as stated in his plea of justification). Below is the further statement that the sale is set for May 3, 1904. Defendant testified that he advertised and sold the property levied

upon and that *he* took no other property. The theory of the defense was that the other property of plaintiff which was carted away was taken by Constable Snyder, who claimed to have another execution for $193 issued by said justice of the peace against plaintiff and in favor of one Anderson. Snyder testified that he made a levy at the same time that defendant made his levy on the Clark & Doran execution. The Anderson execution was not produced. Snyder further testified that he returned it into court, but that he had not made a search to find it or ask the justice to do so. It appeared, however, from the original record of said justice in said Anderson case and from a transcript thereof, certified to by the justice nearly eight months after the alleged levy, that the Anderson execution was issued to *defendant,* as constable, on April 7, 1904, but it did not appear from said record or transcript that the execution had ever been returned.

Both defendant and Snyder testified to the effect that they did not break open the doors which opened into the vestibule; that these doors they found open when they arrived; that they demanded of plaintiff that she open the two doors which opened into the hall from the vestibule; and that upon her refusal they broke open these doors and entered. Both denied that they, or any one for them, laid hands on plaintiff, or stated that she was under arrest, or that they at any time arrested her. Both testified that the property taken. away from plaintiff's house was temporarily stored in the warehouse of the Livingston Company, and evidence was introduced on behalf of defendant tending to show that all the property taken, except the 9 articles alone claimed to have been levied upon and taken by defendant, were stored with said company in the name of Snyder. Plaintiff, however, testified that a day or two after her property was taken she called at the office of the Livingston Company and there saw an entry in a warehouse receipt book that her goods

were there stored in the name of defendant. Plaintiff also introduced in evidence a sheet from a certain loose-leaf warehouse receipt book of said Livingston Company, which purported to be a carbon copy of a warehouse receipt given by said company on April 22, 1904, for 78 articles of household furniture. Among the articles enumerated are: ''1 piano, 1 piano stool, 2 wardrobes and 1 hat rack,'' which articles defendant claimed he levied on. This sheet was identified by John L. Livingston of said company. He testified that all of said articles were taken directly from plaintiff's house and stored in the company's warehouse. It clearly appears that the receipt as originally written was given to ''Greenberg,'' and that said name has been partially erased and the name ''Wm. Snyder'' written over the erasure.

MARTIN C. CONNOR, for appellant.

WILLIAM J. STAPLETON, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

*First.* It is contended by counsel for defendant that because plaintiff, in her replication to defendant's plea of justification to the declaration, failed to ''new assign,'' no recovery can be had by plaintiff. The statement as to defendant's plea being filed to the *declaration* is not accurate. The declaration contained four counts to which defendant pleaded the general issue, and his special plea of justification was filed only to the *first* count. After due consideration we do not think that counsel's point is well taken.

The first count of plaintiff's declaration charged, in substance, that defendant, with force and arms, etc., broke and entered plaintiff's dwelling house, forced and broke open the *outer* doors of said house, and therein seized and carried away over 100 articles of

household furniture, the property of plaintiff, and converted the same to his own use, whereby she suffered damages as alleged. Defendant's plea of justification to this count alleged, in substance, that, by virtue of an execution for $133.20, issued by a justice of the peace to him as a constable, he as such constable peaceably and quietly entered plaintiff's dwelling house, "the *outer* door thereof being then open," and seized and took away under said execution 9 articles of household furniture mentioned, belonging to plaintiff, and subsequently sold the same, etc. The fact that defendant as a constable was armed with a writ of *fieri facias* would not justify him, for the purpose of executing such a writ, in breaking the outer door of plaintiff's dwelling house; if, however, he found such *outer* door open, and he gained a peacable entry into the house, and he found that an *inner* door was closed so that he could not seize any of plaintiff's goods, then he could have demanded of plaintiff that said inner door be opened, and upon her refusal he could have opened that door and seized a sufficient amount of plaintiff's goods to satisfy the amount of said writ and costs. (*Snydacker v. Brosse*, 51 Ill. 357, 361.) If he broke the *outer* door, and thereby gained an entrance into plaintiff's house, he became a trespasser *ab initio*, and liable not only for the property taken by him but also for any damage to plaintiff which was the immediate result of his acts. (*Snydacker v. Brosse, supra; Greenberg v. Connor*, 189 Ill. App. 419.) The averment in defendant's plea (viz., the *outer* door of plaintiff's house being *open* at the time he entered) was a material one, as that fact, if it was a fact, was a condition precedent to his right to enter plaintiff's house. (*Kerbey v. Denby*, 1 Meeson & W. Rep. 336.) To this plea the plaintiff filed a replication, in which she admitted that it was true as defendant had stated in his plea that he had the writ, but further alleged that nevertheless the defendant, at the time when, etc., "of his own wrong,

and without the residue of the cause in that plea alleged, committed the trespasses in said declaration mentioned, *in manner and form as the plaintiff has hereinabove complained against the defendant."* In other words, she alleged that notwithstanding defendant had the writ mentioned, nevertheless he committed the trespasses as alleged in her declaration, in the first count of which there was contained the distinct allegation that he forced and broke open the *outer* doors of her house. We think it was unnecessary for her to again specifically charge in the replication that defendant broke the outer doors. (*Kerbey v. Denby, supra.*) And we think that the issue of fact as to whether defendant broke the outer doors was sufficiently presented. "In trespass * * * the replication containing a general denial of the *whole* plea sometimes occurs, and is termed a replication *de injuria sua propria absque tali causa,* * * * or, if a *part* of the plea be admitted, then it is termed *de injuria absque residuo causa,* thereby denying all but the admitted fact or facts. This replication tenders issue upon and compels the defendant to prove every material allegation in his plea." (1 Chitty on Pl., 16th Am. Ed., star p. 632-3.) "If in any case the defendant justified under the warrant of a justice of the peace, * * * or by his command, the replication must have been special, and admit or protest the warrant or command-ment, and reply *de injuria absque residuo causa,* or take issue simply on the warrant or commandment." (Id., star p. 636.) "There are some replications which rather partake of the nature of new assignments than are properly and strictly so. As where the defendant has abused an authority or license which the law gives him, by which he became a trespasser *ab initio.* In an action brought for a trespass thus committed, where the defendant pleads the license or authority, the plaintiff may *reply* the abuse. Such a replication it will be observed differs from a new assignment, because it

does not operate in any manner as a waiver or abandonment of the trespass attempted to be justified, but states matter in confession and avoidance of the justification." (Id. p. 665.) Furthermore, defendant did not demur to plaintiff's replication. "Where *de injuria* is improperly replied, the defendant may demur specially, but the defect will be aided after verdict." (Id. p. 639.)

*Second.* It is also contended that the trial court erred in allowing plaintiff to testify that she had no knowledge or recollection of any summons ever having been served upon her in the action brought against her by Clark & Doran in the justice court. We do not think, even if the court erred in his ruling, that defendant was so prejudiced thereby as to warrant a reversal, in view of the instructions subsequently given to the jury. Several of plaintiff's instructions were predicated upon the assumption that defendant had a valid writ of execution. Of the instructions given on behalf of the defendant the second told the jury that the writ of execution introduced in evidence was valid and authorized defendant, as a constable, to levy upon and take goods of plaintiff to satisfy the writ; and the eighth, that if the jury believed from the evidence that the plaintiff was not served with a summons in the Clark & Doran case, still the writ of execution in defendant's hands would be a protection to him in levying upon plaintiff's property although as a matter of fact there was no service upon her.

*Third.* It is further contended that the trial court erred in giving three instructions offered by plaintiff and in modifying an instruction offered by defendant.

Plaintiff's seventh given instruction is as follows:

"The court instructs the jury as a matter of law that an officer in levying an execution within a dwelling house must make a peaceable entry and has no right to break open an outer door or other outside protection of such dwelling house, and if the jury believe from the

evidence in this case that the defendant broke open or caused to be broken open the outer door or other outside protection of the plaintiff's dwelling house in levying the writ or writs of execution in question, then all acts thereafter done pursuant to said wrongful entry, if the jury believe from the evidence there was such wrongful entry under said writ or writs by the defendant or by his direction, were unlawful. What constituted the outer door or other outside protection of the plaintiff's dwelling house is a question of fact for the jury.''

Counsel for defendant contend that this instruction was prejudicial because (1) it assumes that the boarding house kept by plaintiff was a ''dwelling house,'' and (2) because it left to the jury to decide, under the evidence, that an inner door might be an outer door, and therefore was misleading. The evidence clearly shows that the house in question was plaintiff's dwelling house. She resided therein with her family. We do not think that the mere fact that she rented certain rooms to others and also kept boarders made it any less a dwelling house. (*State v. Leedy,* 95 Mo. 76, 78.) The term ''dwelling house'' is defined in Webster's Dictionary as ''a house intended to be occupied as a residence, in distinction from a store, office, or other building;'' and in Bouvier's Law Dictionary as ''a house usually occupied by the person there residing, and his family; the apartment, building, or cluster of buildings in which a man with his family resides.'' And it was not disputed on the trial that plaintiff occupied the house as her dwelling house, and defendant in his plea of justification stated that the articles which he seized and took in execution were in ''said dwelling house.''

The second objection to the instruction evidently has reference to the last sentence thereof. As we understand it the argument is, inasmuch as the evidence was conflicting on the question whether defendant broke in

the double doors entering *into the vestibule,* and as there was no dispute as to the breaking in of the double doors leading from the vestibule *into the hall,* that by the instruction the jury might have thought that said last mentioned doors were *outer* doors, and that the court should have told the jury by an appropriate instruction which of the two sets of doors were the *outer* and which the *inner,* instead of submitting this question to the jury to decide. We do not think that the defendant was prejudiced by the instruction. In *Snydacker v. Brosse,* 51 Ill. 357, 359, it is said: "It is a uniformly recognized rule of the common law, that no officer has the legal authority to break an *outer door, or other outside protection,* to an individual's house, for the purpose of executing civil process." In our opinion, under the facts shown, the double doors leading from the vestibule into the hall are to be considered in law as much the "outer door or other *outside* protection" to plaintiff's house as the other outer doors leading into the vestibule. An entrance into the *inside* of plaintiff's house could not be effected by reaching the vestibule which is outside of the doors opening *into* the main hall of the house. There is therefore no basis for counsel's objection to the instruction.

Complaint is made of the giving of the tenth instruction offered by plaintiff. By it the jury were told that if they found the issues for the plaintiff, and that if they further found from the evidence that plaintiff had an established business which was injured or destroyed as the proximate result of the acts of defendant in taking plaintiff's goods, they might assess such damages, if any, proximately accruing to plaintiff from such loss of business. Counsel's argument against the instruction is based on the assumption that he lawfully entered plaintiff's house and made a lawful levy on plaintiff's goods. Under the facts shown we do not

think there was error in the giving of the instruction. (*Snydacker v. Brossé,* 51 Ill. 357, 361.)

It is also contended that the giving of the fifth instruction offered by plaintiff tended to mislead the jury. As the portion complained of is predicated upon the assumption that defendant made a peaceable entry into plaintiff's house, and the jury found in one of their special findings that he broke the outer door thereof, we do not think that the defendant could have been prejudiced by the giving of the instruction. Furthermore, we think the jury were properly instructed as to the measure of damages for property unlawfully taken.

Complaint is also made of the fact that the court refused to give defendant's thirteenth instruction, as offered, but modified it by inserting therein certain words and giving it to the jury as modified. We do not think that the defendant was at all prejudiced by the action of the court.

*Fourth.* It is further contended that the verdict is against the weight of the evidence. We do not think so.

The above are all the points urged and argued in the brief of defendant's counsel as grounds for a reversal of the judgment. Finding no reversible error in the record the judgment of the Circuit Court is affirmed.

*Affirmed.*