(No. 45843.—

(No. 45844.—

S. T. ENTERPRISES, INC., Appellee, v. BRUNSWICK CORPORATION, Appellant.—DANIEL S. WELCH *et al.*, Appellants, v. BRUNSWICK CORPORATION, Appellee.

*Opinion filed May 29, 1974.—Rehearing denied June 28, 1974.*

Robert L. Stern and George W. Hamman, of Chicago (Mayer, Brown & Platt, of counsel), for appellant.

Maurice L. Davis and Samuel S. Berger, of Chicago, for appellee.

Kenart M. Rahn and George S. Stansell, of Chicago, for appellants.

Robert L. Stern and George W. Hamman, of Chicago (Mayer, Brown & Platt, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In cause No. 45844 Daniel S. Welch and David I. Hoffman, d/b/a Rand Road Development, Not Inc., an Illinois limited partnership, and Thunderbird Bowl, Inc., a corporation (hereafter plaintiffs), together with Pala, Inc., a corporation, and La Salle National Bank, as trustee under Trust No. 30288, appealed to the appellate court from the

judgment of the circuit court of Cook County entered in favor of Brunswick Corporation (hereafter Brunswick), in plaintiffs' action seeking a declaration of rights, reformation of certain contracts and injunctive and other equitable relief, and from the judgment entered in favor of Brunswick in its action in replevin seeking to recover possession of certain bowling equipment, damages for its wrongful detention, and a deficiency judgment. The cases were consolidated for trial and decided in a single judgment order.

In cause No. 45843 Brunswick appealed to the appellate court from the order of the circuit court of Cook County entered in an action brought by S. T. Enterprises, Inc. (hereafter S. T.), enjoining Brunswick "from seizing or effecting the seizure of possession of the said goods and chattels described in exhibits 'A' and 'B' to the complaint herein [the bowling equipment involved in 45844], and from instituting any action of replevin against plaintiff herein for the possession of said goods and chattels, where the claim or cause of action asserted by Brunswick Corporation is predicated upon any happenings prior to the time of the filing of the present suit."

In 45844 the appellate court affirmed (10 Ill. App. 3d 693) the judgment entered in favor of Brunswick in plaintiffs' action against Brunswick. In the appeal from the judgment in the replevin action the appellate court affirmed the judgment but reduced the award of damages for the wrongful detention of the property and remanded the cause to the circuit court for further proceedings.

In 45843 the appellate court affirmed the order of the circuit court but modified it to provide that the injunction order be conditioned upon S. T.'s payment to Brunswick of the sum of $92,243.05. (10 Ill. App. 3d 705.) We have allowed Brunswick's petitions for leave to appeal, and, although separately briefed and argued, the causes were ordered consolidated for opinion.

This litigation arises out of a transaction in which

Brunswick sold to Thunderbird Bowl, Inc., equipment for a 36-lane bowling establishment in Mt. Prospect, Illinois. The record shows that Thunderbird is part of a business combination of various individuals, corporations and trusts, all of which are managed and controlled by Rand Road Development, Not Inc., a limited partnership, in which Daniel S. Welch and David I. Hoffman are the general partners. Thunderbird's interest in the equipment was assigned to Pala, Inc., another corporation controlled by the limited partnership, and a conditional-sale contract between Brunswick as seller, and Pala, as buyer, was executed on August 6, 1962. The conditional-sale contract provided for a purchase price of $610,042.70 payable $45,000 at the time of the execution of the contract and the balance of $565,042.70 in 95 monthly installments of $5,885 and a 96th monthly installment of $5,967.50. With Brunswick's consent, Pala's interest under the contract was transferred to La Salle National Bank as trustee under its Trust No. 30288. The deferred time balance of $565,042.70 represented the principal obligation in the amount of $456,017.60 together with interest at the rate of 6% per annum on the unpaid principal from time to time remaining due. In February 1964 Brunswick and Pala agreed to extend the schedule of payments. Payments were discontinued in February 1966, none have been made since that time, and $379,690 of the original purchase price remains unpaid.

On October 11, 1966, Brunswick served its demand for repossession of the equipment covered by the conditional-sale contract, and on the same day plaintiffs filed a three-count complaint against Brunswick. In count I plaintiffs sought a declaration of rights, reformation of the contract documents to provide that Pala would be required to pay Brunswick only if there were funds available from the bowling operation after the payment of operating expenses, a temporary injunction to maintain the status quo, and general equitable relief. Count II sought damages

of $1,000,000 for fraud, and count III sought damages of $1,831,000 for breach of warranty.

Effective October 1, 1967, Chicago Title and Trust Company as Trustee, Thunderbird Bowl, Inc., Oak Park Trust and Savings Bank, as Trustee, and La Salle National Bank, as Trustee under its Trust No. 30288, as lessors, leased to La Salle National Bank, under its Trust No. 36941, as lessee, certain real estate and the bowling equipment here involved. Also effective October 1, 1967, La Salle National Bank, under its Trust No. 36941, as lessor, leased to S. T., as lessee, the premises and the bowling equipment. The second lease provided that upon completing rental payments totaling $305,333.03 S. T. had the option to purchase the equipment for $500. S. T. took possession of the equipment on October 31, 1967, and continues in possession.

An agreement between plaintiff Welch and his brother, plaintiff Hoffman and his father, and S. T., dated April 28, 1971, recites the pending litigation, and states that S. T. has purchased the Brunswick equipment subject to defects in the landlord's title. It also recites that since La Salle has purchased certain of the parcels of real estate described in the prime lease, and a subsidiary of S. T. has purchased the bowling alley, both the prime lease and sublease are terminated. The agreement further provides that $305,333.03 ($140,000 cash rent already paid and a $165,333.03 S. T. note) shall be held in escrow, that payments on the note shall be placed in the escrow and that the Welchs and Hoffmans personally assure S. T. they will cause defects in the title to the equipment to be cured upon payment of the S. T. note. The obligation to cure the defects becomes effective upon the termination of this litigation or payment of the last note installment, whichever occurs first.

On April 17, 1967, Brunswick filed its replevin action. The affidavit of its assistant secretary stated that the value of the equipment was $74,000, and it posted a replevin

bond in the amount of $148,000. A forthcoming bond, also in the amount of $148,000, was furnished by Thunderbird Bowl. The complaint in the replevin suit was later amended by adding count II in which Brunswick sought a deficiency judgment in the amount of the balance due under the conditional-sale contract, interest from the date of default, and attorney fees, less the net amount to be recovered from the sale of the replevied equipment. Brunswick also added a third count in which it alleged that La Salle National Bank, without consideration, had conveyed certain real estate from Trust No. 30288 and that the conveyance constituted a fraud as to Brunswick, and it moved for the issuance of a temporary injunction to prevent further transfers of real estate. Counts IV and V, also added by amendment, sought deficiency judgments against other members of the plaintiff group and several of the above-named trustees.

As previously noted plaintiffs' and Brunswick's actions were consolidated for trial. On September 16, 1971, the trial court found in favor of Brunswick on all three counts of plaintiffs' complaint. In Brunswick's replevin suit, under count I, the trial court awarded Brunswick possession of the bowling equipment and a judgment against Thunderbird Bowl in the amount of $157,456.80 for wrongful detention of the equipment, and under count II entered judgment in favor of Brunswick and against Pala for the deficiency under the conditional-sale contract in the amount of $431,187.68 and an attorney fee in the amount of $10,000. The order provides that the judgment is to be reduced by the net amount to be received from the sale of the replevied property. The trial court entered judgment in favor of all defendants and against Brunswick on counts III, IV and V of its action.

On November 4, 1971, S. T. filed an action for a declaration of rights and an injunction to restrain Brunswick from seizing possession of the bowling equipment. In its complaint it alleged that it had acquired possession of

the equipment in October 1967 from the original buyer for a valuable and *bona fide* consideration; that Brunswick had been successful in its replevin action against the original buyer; that a notice of appeal had been filed in that action; that it would suffer irreparable injury to its bowling business if Brunswick seized the equipment; that Brunswick's claim to possession is based on its security interest as a creditor; that in the replevin action Brunswick valued the equipment at $74,000; and that if Brunswick is entitled to possession, S. T. offers to pay Brunswick $74,000 and such interest as the court deems proper to extinguish Brunswick's security interest in the equipment.

After a hearing, the trial court issued a temporary injunction restraining Brunswick from seizing the equipment. Thereafter, S. T. filed a motion for summary judgment and Brunswick filed a motion to dismiss. The trial court entered judgment finding that Brunswick was not entitled to seize the equipment through any process which may be issued under the judgment in the replevin action and that Brunswick was not entitled to file a new replevin action against S. T., and permanently enjoined Brunswick from seizing the equipment or filing another replevin action. The order makes no mention of S. T.'s offer to pay Brunswick $74,000 and interest.

Plaintiffs contend here, as they did in the appellate court, that the judgment entered in favor of Brunswick in their action cannot stand for the reason that it is against the manifest weight of the evidence. With respect to this portion of the case, we hold, as did the appellate court, that the findings of the trial court are not against the manifest weight of the evidence and will not be disturbed.

We consider next the contentions of the parties with respect to the judgment entered in Brunswick's replevin action. The appellate court reduced the judgment entered in favor of Brunswick for the wrongful detention of the property from $157,456.80 to $18,243.05. The rationale of the appellate court's decision is stated as follows:

"In the present case, Brunswick was in a superior position to evaluate the equipment sold to the plaintiffs and it set the value at $74,000. It is fair to assume that Brunswick concluded that $74,000 was the amount for which the property could have been sold considering the cost of detachment and removal from the plaintiffs' premises. We agree with the plaintiffs that the original price at which the equipment was sold is irrelevant for the purpose of determining damages for wrongful detention. Under the circumstances before us, we believe that to permit Brunswick to recover damages in excess of the value stated by it in its affidavit would work a serious injustice. This is particularly true in view of the heavy losses already incurred by the plaintiffs. We hold, therefore, that Brunswick's recovery is limited to the interest on $74,000 during the period that the equipment was wrongfully detained by the plaintiffs, and we reduce the judgment entered in its favor from $157,456.80 to $18,243.05. Any recovery under this judgment shall be applied against the total demand accruing to Brunswick of $441,187.68. In its complaint in replevin, Brunswick prayed that 'said property [the equipment] be returned or that defendants be required to pay the value thereof, $74,000, and that defendants pay to Brunswick *** damages *** for *** wrongful detention.' " 10 Ill. App. 3d 693, at 703.

Brunswick contends that under the provisions of the conditional-sale contract and sections 9—503 and 9—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, pars. 9—503 and 9—504) it had the right to repossess the equipment and sell it. It argues too that the Replevin Act (Ill. Rev. Stat. 1965, ch. 119, pars. 1—26) gives it the right to possession of the equipment, and not merely a

judgment for its value at the time of the demand for possession.

Plaintiffs admit that under the provisions of the conditional-sale contract, and sections 9—503 and 9—504 of the Uniform Commercial Code, Brunswick was entitled to repossess the equipment (ch. 26, par. 9—503) and sell it to apply to its lien (ch. 26, par. 9—504). They contend, however, that the value fixed by Brunswick in its replevin affidavit was $74,000, that Brunswick is estopped to show a higher value, and that, by awarding Brunswick $74,000 and interest on the $74,000 for the period of wrongful detention of the property, the appellate court has given Brunswick all it would have received if the provisions of the Uniform Commercial Code had been followed.

Plaintiffs argue, too, that when the original transaction was structured Brunswick bargained for three things: (1) a conditional-sale contract signed by a nominee without financial substance (Pala), (2) a down payment of $45,000, and (3) a secured interest or lien on the equipment for the balance of the sales price. They concede that if Brunswick's lien is deemed satisfied upon payment of $92,243.05, Brunswick will probably not be able to collect its deficiency judgment against the nominee corporation; but, they argue, this is one of the risks Brunswick assumed in the initial structuring of the transaction.

The primary purpose of the Replevin Act is to test the right to possession of personal property and place the successful party in possession. (Ill. Rev. Stat. 1965, ch. 119, pars. 1, 14, 22, 22a.) Section 18 of the Act (ch. 119, par. 18) provides that when the property cannot be found or delivered, the plaintiff may proceed under the original or amended complaint for the value of the property not found or delivered. This alternative remedy was formerly identified "as in an action of trover." (*Kehoe v. Rounds,* 69 Ill. 351, 353; see Ill. Rev. Stat. 1933, ch. 119, par. 18.) The measure of damages in trover is the market value of the property at the time of conversion with interest from

that time. (*Schwitters v. Springer,* 236 Ill. 271, 275.) In *Kehoe v. Rounds,* 69 Ill. 351, this court stated: "There is no authority, under the statute [the Replevin Act], for the court to render judgment for the value of the property, as in an action of trover, except in cases where it shall appear the officer was unable to obtain it on the replevin writ." (69 Ill. 351, 353-54.) Since the property here was found, the appellate court erred in giving the unsuccessful party the option of returning the property or paying the value thereof (see *O'Toole v. Klimek Boat and Engine Works,* 24 Ill. App. 2d 111), and that portion of its judgment which gave plaintiffs the option of retaining the property upon payment to Brunswick of $74,000 and interest must be reversed.

The record supports the trial court's finding that in addition to the return of the equipment, Brunswick was entitled to damages for its wrongful detention. Plaintiffs have not questioned the correctness of the method used by the trial court in computing the damages for the wrongful detention, and the appellate court erred in reducing the amount of the judgment.

The only contentions made by plaintiffs and the other appellants with respect to the deficiency judgment entered in favor of Brunswick are based on the same claims of fraud and misrepresentation which were alleged in plaintiffs' action against Brunswick. Since those issues were decided adversely to plaintiffs in the trial court, and the judgment was affirmed on appeal, the deficiency judgment must also be affirmed.

We consider next Brunswick's cross-appeal with respect to count III of its replevin action. In that count Brunswick had alleged a fraudulent conveyance of property and sought the issuance of an injunction. The trial court found that the conveyance from the trust was not fraudulent as to Brunswick, either in fact or in law, and dismissed the count. The trial court found that the real estate was not subject to any lien, claim or demand of

Brunswick, and we agree with the appellate court that this finding of the trial court was not against the manifest weight of the evidence.

We consider next the contentions with respect to the injunction order entered in S. T.'s action against Brunswick. The appellate court summarized the parties' contentions, and stated the reasons for its decision as follows:

"In the present appeal Brunswick contends that (1) the judgment in its favor in the replevin action is *res judicata* and cannot be collaterally attacked by S. T.; (2) upon entry of a final judgment in its favor in the replevin action, the defendants must return the equipment if it is still in existence and (3) that it was error for the court in effect to force a sale of the equipment at the replevin valuation price. In opposition to this, S. T. contends that (1) having had one judgment in replevin against its predecessor, Brunswick may not bring another replevin action for possession of the same property, but is limited to an action on Thunderbird's forthcoming bond and (2) the present action is not a collateral attack on the judgment in the replevin action.

In view of our holding in case number 56554, we do not believe it necessary to consider these contentions. There we held that the interest of Brunswick in the equipment was that of a secured creditor and that the equipment had a value of $74,000, as declared by Brunswick in its replevin affidavit. We also held that Brunswick was entitled to $18,243.05 for wrongful detention of the equipment and that upon payment of these sums, a total of $92,243.05, Thunderbird or its successor would be entitled to possession. In the present case, S. T. is Thunderbird's successor in interest, and upon payment to Brunswick by Thunderbird or its successor of $92,243.05 they

will be entitled to possession of the equipment. In view of this, it is our conclusion that the injunction against Brunswick was properly entered and accordingly it is affirmed on the condition of payment to Brunswick of $92,243.05." 10 Ill. App. 3d 705, 707.

We have held that the appellate court erred in modifying the judgment entered by the trial court in Brunswick's replevin action and, for the reasons stated there, the issuance of the injunction was error. The trial court erred in its issuance, and the appellate court erred in its affirmance.

Plaintiffs and S. T. contend that Brunswick cannot, in any event, recover possession of the equipment. They argue that replevin is a statutory action, that the Replevin Act makes no provision for seizure of property retained by a defendant under a forthcoming bond, that it contains no provision "mandating defendant to surrender goods in defendant's possession under penalty of contempt for disobedience." Simply stated, it is their position that the writ is executed when the forthcoming bond is furnished and a successful plaintiff in a replevin action has no process available to him to take possession of the property. S. T. argues, too: "Brunswick's contractual rights to possession of the goods merged in the judgment it obtained in the replevin action against Thunderbird (S. T.'s predecessor in interest). After entry of this judgment with respect to its contractual claims to possession of the goods, Brunswick could not (as against S. T., the successor to Thunderbird's rights) assert its antecedent contract rights." S. T. further argues: "Irreparable injury which would accrue to plaintiff, from the unlawful seizure of its goods as threatened by defendant, warrants injunctive relief." We do not agree. Section 14 of the Replevin Act (Ill. Rev. Stat. 1965, ch. 119, par. 14) in pertinent part provided:

"The officer serving such writ having taken the property or any part thereof shall forthwith deliver such

property to the plaintiff unless the defendant executes a bond and security approved by such officer, before such property is actually delivered to the plaintiff. Such bond shall be given in an amount double the value of such property and conditioned that the defendant will appear in and defend the action, and will deliver such property in accordance with the order of the court, in as good condition as it was when the action was commenced, and that the defendant will pay only those costs and damages that may be incurred during the time the property is out of the hands of the officer and back in his hands and adjudged against the defendant in such action."

Brunswick's rights in the replevin action, except its right to possession of the property pending the outcome of the litigation, were the same as they would have been had no forthcoming bond been filed. As we stated, the primary purpose of the Replevin Act is to test the right to possession of personal property and place the successful party in possession, and the losing party does not have the option of keeping the property and forcing the successful party to accept the value of the property or seek recourse to an action on the replevin bond or the forthcoming bond. It is plain that process may issue under the judgment on count I of the replevin complaint to put Brunswick in possession of the equipment. As to S. T.'s contention that it was not a party to the replevin action and process may not issue as to it, it is equally clear that Brunswick's security interest continued in the equipment after it was sold to S. T. (see Ill. Rev. Stat. 1971, ch. 26, par. 9—306), S. T. acquired plaintiffs' interest in the equipment with knowledge of Brunswick's claim and the pending litigation, and it is bound by the replevin judgment.

Finally, S. T. argues that it will suffer irreparable injury if Brunswick is allowed to repossess the equipment. It states that it acquiesces in the modification of the trial court decree which enjoins Brunswick from repossessing the equipment upon payment by the plaintiffs or S. T. to Brunswick of $92,243.05. Neither the plaintiffs nor S. T.

has cited authority which holds that after default under a conditional-sale contract, the buyer or his successor in interest may be permitted to flaunt the provisions for repossession, keep the property covered by the contract and pay only its alleged value at the time of default on the contract, a value which is considerably less than the balance due on the contract price.

In *Adams v. McMickle* (1945), 176 Ore. 459, 158 P.2d 648, the seller obtained a judgment in an action of claim and recovery for the return of property sold on a conditional-sale contract. Thereafter, the buyer filed an action in equity alleging that permitting the seller to take possession of the property awarded in the claim-and-delivery action would result in the destruction of other property which cost the buyer more than five times the original purchase price of $1,500 for the property constituting the *res* involved in the claim-and-delivery proceeding; that he is now willing to pay all the remaining unpaid balance of the contract and that he tendered the sum of $2,000 into court. In a 4-to-3 decision the court held that the complaint states "facts, which, if true, would entitle plaintiff to equitable relief by requiring defendant to refrain from attempting to recover possession of the property involved in said claim and delivery action but instead thereof awarding to defendant herein a money judgment which will compensate him for the unpaid portion of the original purchase price of said property with interest and costs of litigation to be paid to defendant herein by plaintiff at such time as the trial court may deem proper as a condition precedent to the full and complete settlement and discharge of the judgment now in effect as a result of said claim and delivery proceeding." (176 Ore. at 466-467, 158 P.2d at 650-651.) In an annotation on this case (159 A.L.R. 546 (1945)) the author states that an exhaustive search reveals that this is the only case which has considered the question of the right to satisfy a judgment requiring the return of property in the defend-

ant's possession by the payment of damages, on the ground that such return would subject the defendant to irreparable loss.

Although in an affidavit filed by S. T. in support of its motion for summary judgment, the affiant states that the removal of the bowling equipment from the premises would cause it irreparable damage, no such finding is contained in the order of the trial court ordering the injunction to issue. There is, therefore, no equitable basis presented for modification of the injunction order.

For the reasons stated the judgment of the appellate court in cause No. 45844, insofar as it modified the judgment of the circuit court, is reversed and the judgment of the circuit court is affirmed. In cause No. 45843 the judgments of the appellate and circuit courts are reversed.

*45843 — Judgments reversed.*

*45844 — Appellate court affirmed in part and reversed in part; circuit court affirmed.*