DANIEL S. WELCH *et al.*, d/b/a Rand Road Development, *et al.*, Plaintiffs-Appellants, *v.* BRUNSWICK CORPORATION, Defendant-Appellee.

BRUNSWICK CORPORATION, Plaintiff-Appellee, Cross-Appellant, *v.* PALA, INC. *et al.*, Defendants-Appellants, Cross-Appellees—(EXCHANGE NATIONAL BANK OF CHICAGO *et al.*, Defendants.)

(No. 56554;

First District (4th Division)—February 21, 1973.

*Rehearing denied April 3, 1973.*

694

Stansell & Rahn, of Chicago, (Kenart M. Rahn, George S. Stansell, and Joseph N. Lascaro, of counsel,) for appellants.

Mayer, Brown & Platt, of Chicago, (George W. Hamman, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

This appeal arises out of the creation of a bowling establishment and related businesses. On October 11, 1966, Daniel S. Welch and David I. Hoffman, doing business as Rand Road Development, Not Inc., an Illinois limited partnership, and Thunderbird Bowl, Inc. (hereinafter referred to as "plaintiffs") filed a multiple count complaint in the Circuit Court of Cook County, naming as defendant the Brunswick Corporation (hereinafter referred to as "Brunswick"). In County 1 of this complaint the plaintiffs sought a declaration of rights, reformation of certain contracts entered into with Brunswick, an injunction *pendente lite* to maintain the *status quo* and general equitable relief. In Count II they sought damages for fraud and in Count III damages for breach of warranty.

On April 17, 1967, Brunswick filed a complaint in the Circuit Court of Cook County, naming as defendants Pala, Inc., Thunderbird Bowl, Inc., La Salle National Bank of Chicago, as trustee under trust number 30288, Exchange National Bank of Chicago and John Doe. This complaint sought replevin of bowling lanes and other related equipment sold to the plaintiffs. By successive amendments four additional counts and several additional defendants were added. Count II sought damages for breach of an installment sales contract, and Counts III, IV and V sought various forms of equitable relief from the allegedly fraudulent transfer for Pala, Inc., of its real estate. The two actions were consolidated in the trial court and tried together without a jury. Judgment was entered in favor of Brunswick on all three counts of the complaint filed against it, and the plaintiffs appeal from this judgment.

In the replevin action, the court found with respect to Count I that Brunswick was entitled to possession of the bowling equipment and to

damages for its detention from October 11, 1966, the date that notice demanding possession was served upon the plaintiffs. The court fixed damages at $157,456.80, using as its basis "depreciation in value during the period of detention when computed on the straight line method on a 15 year life." The plaintiffs also appeal from this judgment. With respect to Count II, the court entered judgment in favor of Brunswick in the amount of $379,690, the balance claimed due on the installment sales contract, together with interest, attorneys' fees and costs, less the net amount received from the sale of the equipment replevined in Count I. The court dismissed Counts III, IV and V of the replevin action, and Brunswick cross-appeals from the dismissal of Count III.

The facts leading to the controversy were carefully set forth by the trial court. Briefly summarized they are as follows. The plaintiffs are various individuals, corporations and a limited partnership whose interests are represented by and channeled through Rand Road Development, Not Inc. Daniel S. Welch and David I. Hoffman are the general partners of Rand Road Development. The limited partners include members of their respective families and unrelated investors. Thunderbird Bowl, Inc., is an Illinois corporation, all the stock of which is owned by the limited partnership. It was created for the purpose of managing the day-to-day operations of the bowling establishment. The Brunswick Corporation is a well known manufacturer of bowling equipment.

In 1958 or 1959, Daniel Welch had conversations with various representatives of Brunswick regarding the creation of a bowling facility. There was conflicting testimony as to whether these conversations were initiated by the plaintiffs or by Brunswick; however, the trial court found that "Welch commenced negotiations with Brunswick for the purchase of bowling equipment in approximately 1959." At this time Welch was in the construction business and had constructed a bowling alley for others. There was a conflict as to whether Welch had any personal experience with the operation of a bowling establishment at this time, but there was evidence that a family partnership owned a small investment in the Waveland Western Bowling Alley, which had been in business for 10 or 11 years, and that Edward Welch, Daniel Welch's brother and business partner, had been provided with detailed monthly statements of its operations.

The parties first considered a site in Rosemont, Illinois, but abandoned it because of potential competition from an existing establishment. In 1960, the plaintiffs acquired a second site in Mount Prospect, Illinois. There is conflicting evidence as to whether this site was suggested by Welch or by Brunswick. Welch executed a contract with Brunswick for the purchase of bowling equipment, but this contract was cancelled in

1961 when Welch was unable to obtain the zoning change necessary to construct the building. Shortly after this, a second site in Mount Prospect, across Rand Road from the first, was found and acquired by the plaintiffs, and negotiations began with Brunswick for the purchase of bowling equipment.

In February, 1962, Thunderbird Bowl executed two orders to Brunswick for bowling and billiard equipment. In August, 1962, Thunderbird assigned its interest in the orders to Pala, Inc., a nominee for the limited partnership. Brunswick accepted the assignment and released Thunderbird from liability on the orders. At the same time Pala entered into a conditional sales contract with Brunswick for the purchase of 36 bowling lanes and related equipment at a total price of $483,017.60. In connection with this Pala executed a conditional sales contract note in the amount of $610,042.70, which included the purchase price of the bowling equipment plus interest at six per cent. Subsequently, Pala transferred its interest in the contract to the La Salle National Bank, as trustee under trust number 30288, another nominee for the limited partnership.

Thereafter, Rand Road Development completed construction of the building, and Brunswick installed the equipment. The plaintiffs hired Gordon MacNiven, a former Brunswick sales engineer, as general manager, and the establishment opened for business in November, 1962. During the first year of business the establishment operated at a substantial loss and did not generate sufficient cash to make the payments on the conditional sales contract. As a result of this the plaintiffs conferred with Brunswick in late 1963 about their financial condition. These conferences resulted in an agreement between Brunswick and LaSalle National Bank, the plaintiffs' nominee, on February 28, 1964, that the payments should be adjusted and extended. Payments under this agreement were made until March, 1966, when they were discontinued. Brunswick served a demand upon the plaintiffs for repossession of the bowling equipment, including the lanes themselves, the automatic pinsetters, billiard tables and all other items, on October 11, 1966. On the same day the plaintiffs filed their complaint, and on April 17, 1967, Brunswick filed its complaint in replevin.

On appeal, the plaintiffs contend that (1) the trial court erred in finding for Brunswick on Counts I and II of their complaint, as they pleaded and proved a cause of action for fraud; (2) that the trial court erred in finding for Brunswick on Count III of their complaint, as they pleaded and proved a cause of action for breach of warranty; and (3) that the trial court erred in awarding Brunswick damages of $157,456.80 for wrongful detention of the equipment. On its cross appeal Brunswick contends that the trial court erred in dismissing Count III of its amended

complaint in that the evidence established that the plaintiffs had transferred their real estate without consideration for the purpose of impairing Brunswick's rights as a creditor.

We first direct our attention to the plaintiffs' contentions that the trial court erred in entering judgment for Brunswick on Counts I and II of their complaint. Counts I and II are predicated upon fraud and misrepresentation. Count I seeks reformation of the conditional sales agreement, and Count II seeks damages in the amount of $1,000,000, the amount of actual loss claimed to have been incurred by the plaintiffs.

■■ In Illinois, the elements of fraud which will justify rescission of a contract in equity are the same as those required to sustain an action at law. (*Roda v. Berko*, 401 Ill. 335.) There must be a misrepresentation of a material fact, made for the purpose of inducing action. The misrepresentation must be known to be such by the party making it or not reasonably believed by him to be true. The party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act upon it to his damage and in so acting must rely upon its truth. *Roth v. Roth*, 45 Ill.2d 19; *Roda v. Berko*, 401 Ill. 335; *Bouxsein v. First National Bank of Granville*, 292 Ill. 500.

In the present case it was the plaintiff's theory that Brunswick provided inflated earnings projections and misrepresented its intentions with respect to Thunderbird Bowl's competitors for the purpose of inducing them to create a bowling establishment and to purchase approximately $500,000 worth of bowling equipment. Daniel Welch testified that during their conversations in 1961 and 1962 Brunswick representatives made numerous oral representations as to the earning potential of the proposed establishment. In March, 1962, at Daniel Welch's insistence, these were embodied in a written earnings projection for the Rand Road facility. The written projection stated that the average bowling lineage in a Brunswick establishment was, and would be in the Rand Road establishment, 1400 lines per lane per month, or 16,800 lines per lane per year. Based upon this lineage figure the following annual revenue was projected. gross profit of $444,301; profit before depreciation, interest and rent of $276,695; net income of $66,000 and cash available for dividends, expansion or other business purposes of $177,265. At trial, the plaintiffs offered evidence to show that in fact the average bowling lineage in Brunswick establishments at this time was less than 1000 lines per lane per month and that this figure was declining in 1962.

Welch further testified that sometime in 1961, he stated to a Brunswick representative that he and his associates wanted to be certain that they would not have competition from Brunswick in the immediate area before they undertook creation of their establishment. Roger Bensinger, a

Brunswick salesman, stated that Welch could rely on the assurances of both himself and his father, who was a Brunswick executive, that Brunswick would not sell to anyone else in the immediate area. The plaintiffs alleged that Brunswick knew these representations to be false, because at the time, it was negotitating with the developers of Striking Lanes, another bowling facility to be built in Mount Prospect, for the installation of Brunswick equipment. The evidence showed that Striking Lanes commenced operations on September 1, 1963, approximately nine months after the opening of the plaintiffs' establishment, and contained 32 Brunswick lanes.

The plaintiffs alleged that because of the expertise and experience of Brunswick in the bowling field they relied upon its representations and were induced to go ahead with the creation of Thunderbird Bowl. There was uncontradicted evidence that from the date of its opening in 1962 through the end of 1966, Thunderbird Bowl earned substantially less than the amount quoted in Brunswick's earnings projection and in fact operated at a loss. At no time during this period was Thunderbird's net cash sufficient to make the payments on the conditional sales contract.

In defense, Brunswick offered evidence to show that Thunderbird Bowl would have been profitable had it been properly managed and that the plaintiffs did not rely upon the representations made by Brunswick in reaching their decision to proceed with the bowling establishment. Gordon MacNiver, the first manager of Thunderbird Bowl, called as a witness by Brunswick, testified that the plaintiffs originally planned to open for business in early September, 1962. The bowling season runs from approximately Labor Day to the following May, and it is essential for a profitable operation that a bowling establishment have leagues committed for weekly play. In anticipation of the prospective opening date, MacNiven solicited and contracted with a number of leagues, which would have given Thunderbird a high volume of business from the beginning. However, the plaintiffs were constructing the building with their own construction company and did not complete it until around Thanksgiving, 1962. As a result of this MacNiven was forced to advise the leagues to make other arrangements. Many of the leagues were unable to get into other establishments at such a late date, and considerable ill will was generated among potential customers.

Steven Agenlian, a subsequent manager, testified that when he arrived at Thunderbird in 1966, he found that the building was run down, the equipment in poor condition and the employees dishonest. When he corrected these conditions, business rose to a level of 12,000 lines per lane per year and was profitable. In 1967, the operation of Thunderbird Bowl was taken over by Martin Weber and his father. Weber testified

that he visited Thunderbird in 1963 and 1964 and found it in very bad condition. He further testified that under his management Thunderbird is doing a business of approximately 14,000 lines per lane per year. Brunswick denied that its representatives had ever furnished the plaintiffs with a written earnings projection, but contended that even if it had the testimony of Weber indicates that the projected volume figure cited by the plaintiffs (16,800 lines per lane per year) was substantially accurate.

Gordon MacNiven, the former Brunswick sales engineer, further testified that he was hired by the plaintiffs in February, 1962, before they had signed the purchase order with Brunswick, and he had advised them thoroughly on the proposed order and the economics of the entire bowling operation. In addition to MacNiven's testimony, Brunswick offered evidence that Daniel Welch was familiar with the operations of Waveland Western Bowling Alley, a profitable operation in which a family partnership had an interest, that he was also engaged in the construction of a bowling center in Elk Grove Village, Illinois, using AMF equipment and that he had been supplied with detailed figures for the proposed Thunderbird Bowl by AMF, all prior to signing the purchase order with Brunswick.

■■■ From the foregoing, it is apparent that the evidence is in conflict as to many pivotal questions of fact, especially as to the cause of the plaintiffs' damages and whether they relied upon the representations made by Brunswick. It was the task of the trial judge to resolve these questions. In the present case, the proceedings took place over a period of several months. The trial judge observed the witnesses, heard the testimony, viewed the exhibits and made careful and complete findings of fact. In such cases the judgment will be affirmed if there is any evidence in the record to support it and will be reversed only if against the manifest weight of the evidence. (*Brown v. Zimmerman*, 18 Ill.2d 94.) While the contentions of the plaintiffs have some force, it is our conclusion that the trial court's findings are sufficiently supported by the record. Accordingly, the judgment in favor of Brunswick on Counts I and II is affirmed.

■■ Count III of the complaint was predicated upon breach of warranty and sought damages for past and future lost profits. The plaintiffs allege that the representations made by Brunswick amounted to warranties that the plaintiffs would receive a certain return if they created a bowling establishment according to Brunswick's specifications. These warranties were breached, the plaintiffs alleged, when the establishment, so constructed, failed to do the volume of business and yield the return projected. Our comments with respect to Counts I and II apply to the

court's decision in Count III as well. In addition, we note that the purchase order signed by Thunderbird Bowl, Inc., contains the following language:

> "Under no circumstances shall the seller [Brunswick] be liable for loss of profits or other direct or indirect costs, expenses, losses or damage."

Thunderbird Bowl, Inc., transferred its interest in the purchase order to Pala, Inc., which signed the conditional sales contract. The contract provides various express warranties on the equipment and further provides that:

> "The above warranties [on the equipment] shall be in lieu of all other warranties, express or implied."

The record contains ample basis for the trial court's decision, and accordingly the judgment in favor of Brunswick as to Count III is likewise affirmed.

We next direct our attention to the replevin action filed by Brunswick against the plaintiffs. With respect to this action the plaintiffs contend that the court erred in finding that Brunswick was entitled to possession of the bowling equipment and that it was entitled to $157,456.80 in damages. Section 23 of the Replevin Act (Ill. Rev. Stat. 1971, ch. 119, par. 23) provides that "[i]f judgment is given for the plaintiff in replevin, he shall recover damages for the detention of the property while the same was wrongfully detained by the defendant." Our courts have held that damages awarded under this provision are intended to provide full indemnity for damage suffered. (*Cottrell v. Gerson,* 371 Ill. 174; *James B. Clow & Sons v. Yount,* 93 Ill.App. 112.) Depreciation in value of the goods between the time that the plaintiff is entitled to possess them and the time that he actually obtains possession is includible in the damages. *James B. Clow & Sons v. Yount,* 93 Ill.App. 112.

In the present case, Brunswick offered evidence of its damages on two theories. The first, rejected by the trial court, was the value to it of the use of the equipment, that is, the net income that it could have received had the equipment been available for lease to other operators .The second theory, adopted by the trial court, was the amount by which the equipment depreciated in value during the period of its detention by the plaintiffs. It was undisputed that the equipment has been in continuous use, either by Thunderbird or its successors, since October 11, 1966, the date that Brunswick served its demand for possession. The trial court found that the purchase price of the equipment, exclusive of interest, was $483,017.60. On the basis of a 15 year useful life the value of the equipment would depreciate approximately $32,000 per year or $157,456.80 from October 11, 1966, to the date of judgment. Accordingly the

court entered judgment for wrongful detention of the equipment in the amount of $157,456.80, with the further order that any recovery should be applied against the total demand accruing to Brunswick of $431,-187.68 together with the additional sum of $10,000 allowed for attorneys' fees.

Section 10 of the Replevin Act (Ill. Rev. Stat. 1971, ch. 119, par. 10) provides that before any writ of replevin shall be executed the plaintiff shall give to the sheriff or other officer a bond in an amount double the value of the property to be seized. In compliance with this provision, Brunswick, by Edgar Vanneman, its secretary, filed a sworn affidavit, in which it described the equipment in detail and stated that "said Goods and Chattels are of the value of $74,000" and gave to the Sheriff of Cook County its bond in the amount of $148,000. In reliance upon the value set by Brunswick the plaintiffs gave a forthcoming bond in the amount of $148,000 and retained possession of the property.

On appeal, the plaintiffs contend that, having set the value of the equipment at $74,000, Brunswick should have been estopped from attempting to prove a greater value for the purpose of enhancing its damages. Under this theory the plaintiffs argue that Brunswick, as the vendor under a conditional sales contract, had only a security interest in the replevined property and thus is entitled only to the interest on $74,000 during the period of detention, or $18,243.05. In opposition to this Brunswick contends that it was not estopped from proving a value in excess of $74,000 and relies upon *Snydacker v. Brosse*, 51 Ill. 357, and *Farson v. Gilbert*, 85 Ill.App. 364.

After carefully reviewing these authorities, we have concluded that they are inapplicable to the present case. In *Snydacker v. Brosse*, 51 Ill. 357, a judgment was entered against the appellee and certain property taken from her in execution of the judgment. She replevied the property, from the judgment creditors on the ground that it belonged to her husband. A trial of the replevin action resulted in a judgment for the defendants and the property was ordered returned to them. In carrying out this order, a constable broke into the appellee's home and removed the property along with some items not part of the original execution. The appellee sued both the constable and the judgment creditors for wrongful entry into her home and for abuse of process, and the Supreme Court held that her affidavit in the replevin action that the property taken was that of her husband, did not estop her from maintaining her action for damages. This case does not involve a valuation of property set by the party seeking its possession. In addition, it is apparent from the fact that the appellee's second action was grounded upon wrongful

entry that her position with respect to the ownership of the property was not inconsistent with that in the replevin action.

In *Farson v. Gilbert,* 85 Ill.App. 364, the appellants as plaintiffs in a replevin action obtained possession of the disputed property, which was printing plates valued at $1100, then allowed the replevin action to be dismissed for want of prosecution. The defendants brought suit on the plaintiffs' bond, and the plaintiffs sought to prove that the value of the property to the defendants was less than the value set by them in their replevin affidavit. The printing plates were engraved with the pages of a magazine published and copyrighted by the plaintiffs. The defendants were holders of a chattel mortgage. In holding that the plaintiffs were not estopped to contest the value of the property in the suit brought on the replevin bond, the court pointed out that the plates might have had considerable value to the plaintiffs as publishers of the magazine, but might have had almost no value to the defendants who, because of the copyright held by the plaintiffs, could have used them for little more than scrap metal. Under these circumstances the court's ruling was correct; however, this case is entirely dissimilar from the one presently before us.

■■ In the present case, Brunswick was in a superior position to evaluate the equipment sold to the plaintiffs and it set the value at $74,000. It is fair to assume that Brunswick concluded that $74,000 was the amount for which the property could have been sold considering the cost of detachment and removal from the plaintiffs' premises. We agree with the plaintiffs that the original price at which the equipment was sold is irrelevant for the purpose of determining damages for wrongful detention. Under the circumstances before us, we believe that to permit Brunswick to recover damages in excess of the value stated by it in its affidavit would work a serious injustice. This is particularly true in view of the heavy losses already incurred by the plaintiffs. We hold, therefore, that Brunswick's recovery is limited to the interest on $74,000 during the period that the equipment was wrongfully detained by the plaintiffs, and we reduce the judgment entered in its favor from $157,456.80 to $18,243.05. Any recovery under this judgment shall be applied against the total demand accruing to Brunswick of $441,187.68. In its complaint in replevin, Brunswick prayed that "said property [the equipment] be returned or that defendants be required to pay the value thereof, $74,000, and that defendants pay to Brunswick * * * damages * * * for * * * wrongful detention." We further hold therefore that upon payment to Brunswick of $74,000 plus $18,243.05, a total of $92,243.05, Thunderbird or its successor will be entitled to possession of the equipment.

Finally, we consider Brunswick's cross appeal from the dismissal of Count III of its complaint. Count III alleged in substance that the plaintiffs conveyed their real estate to a trust without consideration after they had become indebted to Brunswick for the purpose of impairing Brunswick's rights as a creditor. The trial court found that:

> "None of the transfers or conveyances alleged by Brunswick was fraudulent with reference to Brunswick, either in fact or in law; and that the real estate referred to in the pleadings is not subject to any lien, claim or demand whatsoever to secure any indebtedness to Brunswick under the Conditional Sales Contract or any other claim of Brunswick, or under the judgment order; and that none of the defendants is subject to any liability to Brunswick by reason of any of said transfers or conveyances."

■■■ After reviewing the record we cannot say that the trial court's findings are against the manifest weight of the evidence. In the document in which the La Salle National Bank as trustee assumed the indebtedness of Pala, Inc., there was an express stipulation and agreement that this obligation would be payable only out of the property subject to the conditional sales contract. In addition, it is our conclusion that Brunswick, as the vendor under a conditional sales contract, was limited to its security interest in the equipment itself until such time as it obtained a final judgment against the plaintiffs. Accordingly, the trial court's judgment dismissing Count III of Brunswick's amended complaint is affirmed.

The judgment of the Circuit Court in case number 66 Ch-6064 is affirmed. The judgment in case number 67 L-5624 is affirmed except for that part awarding damages for wrongful detention of the equipment, which is modified as stated in this opinion. Case number 67 L-5624 is remanded to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part and modified in part. Remanded with directions.

ADESKO and DIERINGER, JJ., concur.