Charles **FRIER**, Jr., **Plaintiff-Appellant,**

v.

**CITY OF VANDALIA, ILLINOIS,**
**Defendant-Appellee.**

**No. 84–3113.**

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1985.

Decided Aug. 23, 1985.

Bruce Goldstein, Edwardsville, Ill., for plaintiff-appellant.

A.J. Bronsky, Brown, James & Rabbitt, Belleville, Ill., for defendant-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

The City of Vandalia is fairly small (the population is less than 2500), and apparently its police have maintained informal ways. When Charles Frier parked one of his cars in a narrow street, which forced others to drive on someone else's lawn to get around Frier's car, the police left two notes at Frier's house asking him to move the car. That did not work, so an officer called a local garage, which towed the car back to the garage. The officer left a note, addressed to "Charlie," telling him where he could find the car. The officer did not issue a citation for illegal parking, however; he later testified that he wanted to make it easier for Frier to retrieve the car.

Frier balked at paying the $10 fee the garage wanted. He also balked at keeping his cars out of the street. The police had garages tow four of them in 1983—a 1963 Ford Falcon, a 1970 Plymouth Duster, a 1971 Opal GT, and a 1971 Dodge van. Instead of paying the garages, Frier filed suits in the courts of Illinois seeking replevin. Each suit named as defendants the City of Vandalia and the garage that had towed the car.

One of the suits (which sought to replevy two cars) was dismissed voluntarily when Frier got his cars back. We do not know whether he paid for the tows and the subsequent daily storage fees or whether the garage thought it cheaper to surrender the cars than to defend the suit. The other two cases were consolidated and litigated. The police testified to the circumstances under which they had called for the tows. The court concluded that the police properly took the cars into the City's possession to remove obstructions to the alley, and it declined to issue the writ of replevin because the City had the right to remove the cars from the street. Frier then retrieved another car;[1] so far as we can tell, a garage still has the 1970 Plymouth Duster.

After losing in state court, Frier turned to federal court. His complaint maintained that the City had not offered him a hearing either before or after it took the cars, and that it is the "official policy" of the City not to do so. The complaint invoked the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, and it sought equitable relief in addition to $100,000 in compensatory and $100,000 in punitive damages. The district court, after reviewing the transcript of the replevin action, dismissed the complaint for failure to state a claim on which relief may be granted. (Because the judge considered the transcript he should have treated the motion to dismiss as one for summary judgment. We analyze the decision as if he had done so.) The court found that Frier had

1. One garage told Frier he could come and get his car any time he wanted, without paying a fee.

notice of each tow and knew how to get his cars back. Frier also had a full hearing in the replevin action on the propriety of the tows. Although the judicial hearing came approximately one month after the tows, the court thought the delay permissible.

■ A month is a long wait for a hearing when the subject is an automobile. The automobile is "property" within the meaning of the Due Process Clause, and the City therefore must furnish appropriate process. *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir.1982), holds that a hearing is not necessary before the police tow a car but suggests that one must be furnished promptly after the tow. *Sutton* also suggests, in line with many other cases, that the City must establish the process and tender an opportunity for a hearing; it may not sit back and wait for the aggrieved person to file a suit. Compare *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), with *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Williamson County Regional Planning Commission v. Hamilton Bank*, —— U.S. ——, 105 S.Ct. 3108, 3122–23 & n. 14, 87 L.Ed.2d 126 (1985).

The City, for its part, maintains that a few isolated tows without hearings are not the "policy" of the City and may not be imputed to it, see *City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), and that anyway a month's delay in holding a hearing about seized property is permissible. Cf. *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), which sustains delay in instituting forfeiture proceedings, and *Von Neumann v. United States*, 729 F.2d 657 (9th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 2137, 85 L.Ed.2d 495 (1985), in which the Court has agreed to review a holding that 36 days is too long for the Customs Service to take in reviewing a petition to remit the forfeiture of an automobile.

■ A court ought not resolve a constitutional dispute unless that is absolutely necessary. *Jean v. Nelson*, —— U.S. ——,

105 S.Ct. 2992, 2997–98, 86 L.Ed.2d 664 (1985). Here it is not. Frier had his day in court in the replevin action. The City has argued that this precludes further suits. (The City raised this argument in the motion to dismiss, which is irregular but not fatally so. See Fed.R.Civ.P. 8(c); *Lambert v. Conrad*, 536 F.2d 1183 (7th Cir.1976).) The district court bypassed this argument because, it believed, Frier could not have asserted his constitutional arguments in a replevin action. This is only partially correct.

Frier could not have obtained punitive damages or declaratory relief in a suit limited to replevin. But he was free to join one count seeking such relief with another seeking replevin. See *Welch v. Brunswick Corp.*, 10 Ill.App.3d 693, 294 N.E.2d 729 (1st Dist.1973), *rev'd in part on other grounds*, 57 Ill.2d 461, 315 N.E.2d 1 (1974); *Hanaman v. Davis*, 20 Ill.App.2d 111, 155 N.E.2d 344 (2d Dist.1959), both of which allow one count seeking replevin to be joined with another count seeking different relief. As we show below, the law of Illinois, which under 28 U.S.C. § 1738 governs the preclusive effect to be given to the judgment in the replevin actions, see *Marrese v. American Academy of Orthopaedic Surgeons*, —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), would bar this suit. The City therefore is entitled to prevail on the ground of claim preclusion, although the district court did not decide the case on that ground. See *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976).

■ Illinois recognizes the principles of claim preclusion (also called res judicata or estoppel by judgment). *Jones v. City of Alton*, 757 F.2d 878, 884–85 (7th Cir.1985) (summarizing the law of preclusion in Illinois); *Hagee v. City of Evanston*, 729 F.2d 510, 513–14 (7th Cir.1984) (reconciling conflicting strands of Illinois law). One suit precludes a second "where the parties and the cause of action are identical." *Redfern v. Sullivan*, 111 Ill.App.3d 372, 376, 67 Ill.Dec. 166, 444 N.E.2d 205 (4th Dist.1982).

"Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first, *i.e.*, where the causes of action are based upon a common core of operative facts." *Ibid.* See also *City of Hickory Hills v. Village of Bridgeview*, 67 Ill.2d 399, 10 Ill.Dec. 539, 367 N.E.2d 1305 (1977); *Morris v. Union Oil Co.*, 96 Ill.App.3d 148, 51 Ill.Dec. 770, 421 N.E.2d 278 (5th Dist.1981). Two suits may entail the same "cause of action" even though they present different legal theories, and the first suit "operates as an absolute bar to a subsequent action ... 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *People v. Bone*, 82 Ill.2d 282, 287, 45 Ill.Dec. 93, 412 N.E.2d 444 (1980), *cert. denied*, 454 U.S. 839, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981), quoting *Cromwell v. County of Sac*, 94 (4 Otto.) U.S. 351, 352, 24 L.Ed. 195 (1877). See also *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). More, as we pointed out in *Hagee*, 729 F.2d at 513, some cases in Illinois recognize preclusion when both suits arise out of the same transaction. This ground of preclusion is potentially broader than the "same · evidence" ground.

The City was a defendant in each replevin action. Frier could have urged constitutional grounds as reasons for replevin.[2] He also could have joined a constitutional claim seeking punitive damages and declaratory relief to his demand for replevin, and therefore he had a full and fair opportunity to litigate (unlike *Jones v. City of Alton*, where procedural obstacles impeded litigation of the federal claim). The actions also involve both the same "common core of operative facts" and the same transactions. Frier argues that the City towed his cars wrongfully. Each complaint seeking re-

plevin asserted that Frier owned each car and that it had not been "seized under lawful process"—in other words, that there had been no citation and no hearing at which anyone had found that the cars were illegally parked. The replevin statute requires a plaintiff to show that the property was taken without "lawful process." Ill. Rev.Stat., ch. 110, § 19–104. "Process," even in its technical sense, initiates or follows a hearing. Had there been process and a hearing at which a magistrate found the cars to have been illegally parked, Frier would have had no claim for replevin no matter how strongly he contested the substantive issue. The "operative facts" in the replevin and § 1983 actions therefore are the same. Frier urges that he owned the car (the property interest) and that the City did not offer him a hearing to adjudicate the legality of his parking (the absence of due process).

The replevin actions diverged from the path of this § 1983 suit only because the state judge adjudicated on the merits the propriety of the seizures. Having found the seizures proper, the judge had no occasion to determine whether the City should have offered Frier an earlier hearing. But this divergence does not mean that the two legal theories require a different "core of operative facts." The courts of Illinois sometimes put the inquiry as whether the two theories of relief "allege the same conduct" by the defendant. *Kenny v. Interim General Superintendent*, 112 Ill.App.3d 342, 349, 67 Ill.Dec. 876, 445 N.E.2d 356 (1st Dist.1983). Frier has attacked the "same conduct"—towing and detaining the cars without a determination of a parking violation—in all of his suits.

To the extent there is any doubt about this, we look (as we did in *Hagee*) to the purpose of doctrines of preclusion. Claim preclusion is designed to impel "parties to consolidate all closely related mat-

---

**2.** At one point in the argument before the state court, Frier's lawyer invoked the constitution, saying that the towing was "the taking of a man's property without due process of law and ... they have taken [the cars] illegally and are

holding [them] illegally" (Tr. 48). This is too fleeting to amount to a formal request for a constitutional ruling, but it does show the pertinence of the constitution to the replevin action.

ters into one suit" (*Hagee*, 729 F.2d at 514; note omitted). This prevents the oppression of defendants by multiple cases, which may be easy to file and costly to defend. There is no assurance that a second or third case will be decided more accurately than the first and so there is no good reason to incur the costs of litigation more than once. When the facts and issues of all theories of liability are closely related, one case is enough. Here the replevin theory contained the elements that make up a due process theory, and we are therefore confident that the courts of Illinois would treat both theories as one "cause of action."

■ The final question is whether it makes a difference that only two of the replevin actions went to judgment, while here Frier challenges the towing of four cars. Under Illinois law the answer is no. The defendant may invoke claim preclusion when the plaintiff litigated in the first suit a subset of all available disputes between the parties. See *Baird & Warner, Inc. v. Addison Industrial Park, Inc.*, 70 Ill. App.3d 59, 26 Ill.Dec. 1, 387 N.E.2d 831 (1st Dist.1979), which holds that a suit on three of six disputed parcels of land precludes a subsequent suit on all six. We doubt that Illinois would see a difference between three lots out of six and two cars out of four.

If Frier had filed the current suit in state court, he would have lost under the doctrine of claim preclusion. Under 28 U.S.C. § 1738 he therefore loses in federal court as well.

AFFIRMED

SWYGERT, Senior Circuit Judge, concurring in the result.

In my view, the majority has simply applied the wrong analysis to the problem at hand. Rather than trying to squeeze a res judicata solution into a mold that does not

fit, I would review the facts to determine whether Frier's procedural due process claims could withstand a summary judgment motion. Because I believe the City was entitled to summary judgment, I concur in the result.

I

In determining whether the disposition of a claim in State court precludes a subsequent suit on the same claim in federal court, the federal court must apply the State's law of res judicata. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Because Illinois continues to adhere to the narrow, traditional view of claim preclusion, as opposed to the broader approach codified in the *Restatement (Second) of Judgments* §§ 24, 25 (1982), I would hold that Frier's substantive traffic law claim does not preclude this subsequent procedural due process claim. Under the more modern view of the new Restatement, all claims arising from a single "transaction"—broadly defined to include matters related in time, space, origin, and motivation—must be litigated in a single, initial lawsuit, or be barred from being raised in subsequent litigation. There was only one transaction in the case at bar: the seizure of Frier's cars. Accordingly, Frier should have raised both his substantive and procedural objections to the seizure in one initial lawsuit.

Illinois, however, has not adopted the view of the new Restatement.[1] Rather, as the majority recognizes, *see ante* at 701, the Illinois courts focus on the similarities between the causes of action alleged in both suits, not on whether there is a common factual transaction. One suit precludes a second "where the parties and the cause of action are identical." *Redfern v. Sullivan*, 111 Ill.App.3d 372, 67 Ill.Dec. 166, 169, 444 N.E.2d 205, 208 (1983).

---

1. No Illinois court has ever cited the new Restatement. The first Restatement, which follows the traditional "cause of action" approach, see *Restatement of Judgments* § 61 (1942), has been cited several times. *E.g.*, *Hilti, Inc. v. Grif-*

*fith*, 68 Ill.App.3d 528, 24 Ill.Dec. 859, 861–62, 386 N.E.2d 63, 65–66 (1979); *Pierog v. H.F. Karl Contractors, Inc.*, 39 Ill.App.3d 1057, 351 N.E.2d 249, 252 (1976).

"Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first, i.e., where the causes of action are based upon a common core of operative facts." *Id.* The allusion to a "common core of operative facts" is not an attempt to adopt the transactional view of the new Restatement. Indeed the court in *Redfern* cites with approval a section of a legal encyclopedia that expressly repudiates the transactional view. *Id.* (citing 23A Ill.L. & Prac. *Judgments* § 331 (1979) ("causes of action which are distinct and independent, although growing out of the same ... transaction ... may be sued on separately")); *accord Fountas v. Breed,* 118 Ill.App.3d 669, 74 Ill.Dec. 170, 173, 455 N.E.2d 200, 203 (1983) ("Two claims are not necessarily the same cause of action merely because they arose out of the same general transaction or set of facts."). Rather, the "common core of operative facts" is defined by the previous clause, which refers to an identity of evidence. This requires the court to focus on the various elements of two causes of action to determine whether the same evidence is necessary to sustain both.

In sum, the common set of facts that must be shown to invoke Illinois' doctrine of claim preclusion is defined as those facts necessary to sustain the cause of action, not as those facts that could be conveniently litigated in one lawsuit. This focus on the elements of the causes of action and the proofs at trial—rather than on the policy advantages of trying both actions in one suit—dooms any attempt to invoke claim preclusion in the case at bar. To be sure,

both actions arise from the same seizure of the same cars. Yet, both the theory of recovery and focus of factual inquiry are dramatically different in each case. Frier's replevin claim was substantive in nature; to replevy property, the claimant must show his superior possessory rights. *See* Ill.Ann.Stat. ch. 110, § 19–104 (Smith-Hurd 1984); *Hanaman v. Davis,* 20 Ill.App.2d 111, 155 N.E.2d 344, 347 (1959). Frier's possessory rights turned on the legality of his parking. Because the trial court found that "the officer reasonably believed and had a right to believe that ... [Frier's] vehicle obstructed the free use and passage way of that street at that time," it concluded that, therefore, Frier did not enjoy the "superior right to possession of the property" necessary to sustain a replevin action. Appellee's Appendix at 98 (reprinting Transcript).

Frier's procedural due process claim requires an entirely different factual showing. The legality or reasonableness of the seizure is irrelevant. Because of the "risk of error inherent in the truth-finding process," *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976), an individual is entitled to certain procedural safeguards regardless of whether the deprivation of property was substantively justified. The focus of inquiry, then, is the adequacy of procedures attending the seizure, not the seizure itself.[2]

The majority urges that Frier could have joined a separate constitutional claim to his replevin action. This precise argument was rejected in *Fountas,* 74 Ill.Dec. at 174,

**2.** The majority nevertheless contends that Frier "could have urged constitutional grounds as reasons for replevin." *Ante* at 702. It is true that if Frier can show a denial of due process, he must be compensated for all damages actually caused by the denial of process. Inadequate process can be deemed the cause of a mistaken or unjustified deprivation because due process doctrine assumes that proper process helps prevent such wrongful deprivations. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, assuming the underlying deprivation is wrongful, Frier could conceivably recover the same kind of compensatory and injunctive relief in a procedural due process

action that would also be available in a replevin action. Yet, under those circumstances Frier would not be "replevying" the property. He would merely be receiving the same kind of remedy under an entirely different theory of recovery. In the constitutional action, the remedy is justified because of a lack process; in the replevin action, essentially the same remedy is justified as a matter of State traffic and property law. The theories of recovery, if not the remedy, are different. Therefore, each cause of action contains different elements. And therefore one claim does not preclude the other under Illinois law.

455 N.E.2d at 204. There, the court held that although the plaintiff-administrator could have joined a wrongful death action with the decedent's personal injury action, the dismissal of the personal injury action did not preclude a subsequent wrongful death action, unless such joinder was mandatory. Illinois law focuses on the similarities and differences between the various causes of action. That two wholly-different causes of action arising out of the same transaction could be joined together as one convenient trial unit is irrelevant for the purposes of Illinois law, though this would be dispositive under the new Restatement. *See Restatement (Second) of Judgments* § 24(2) (1982).

Next, the majority points out that because the replevin statutes require a showing that the property was taken without "lawful process," ch. 110, § 19–104, a replevin action necessarily requires a showing of "due process." *Ante* at 702–703. This argument is essentially a pun on the word "process." The conventional meaning of "process" is "any means used by [a] court to acquire or exercise its jurisdiction over a person or over specific property." *Black's Law Dictionary* 1084 (5th ed. 1979). In other contexts, the Illinois courts have interpreted "lawful process" to refer to this conventional meaning of "process." *People v. Rauschenberg*, 29 Ill.App.2d 293, 173 N.E.2d 6, 11 (1961). The replevin statute's use of the words "lawful process" replaced the following language: "[The replevin complaint must allege that] the property is wrongfully detained by the defendant, and that the same has not been ... seized under any execution or attachment against the goods and chattels of such plaintiff liable to execution or attachment." [3] Thus, the most plausible interpretation of the statutory amendment was to extend this reference to writs of execution

or attachment to include any court order. No Illinois court has ever interpreted "lawful process" to mean the kind of "process" required by the fourteenth amendment.

Somewhat more persuasive is the majority's reliance on a line of Illinois cases that appear to adopt a more transactional approach by focusing on whether the same "conduct" underlies both lawsuits. *See ante* at 702–03. In *Hagee v. City of Evanston*, 729 F.2d 510 (7th Cir.1984), this court extensively reviewed Illinois' law of res judicata and concluded that some appellate courts had begun to diverge from the strict traditional test by emphasizing the need to compare the "underlying" or "operative" facts of the various lawsuits. Relying on decisions of the Illinois Supreme Court, this court defined Illinois law to include two rules that modify the strict traditional test. A party may not maintain two suits based on the "same set of facts" by (1) "limiting the theories of recovery advanced in the first" or (2) "altering the claims for relief from one suit to the next." *Id.* at 514.

Although it is true that Frier "limit[ed] the theories of recovery advanced in the first [suit]," his second suit is not precluded because it is not based on the "same set of facts." The common operative facts required for claim preclusion are those facts necessary to sustain the cause of action, not those facts that can be conveniently litigated in one lawsuit. *Hagee*, then, merely repudiated those appellate court cases that relied on technical differences between theories of relief or remedies to avoid invoking claim preclusion despite a substantial overlap in the operative facts necessary to sustain both actions. *See id.* at 514 n. 7. This court did not, and could not, repudiate Illinois' consistent emphasis on the underlying cause of action, as opposed to the underlying transaction.[4]

---

**3.** Ill.Rev.Stat., ch. 119 § 4 (1967).

**4.** None of the Illinois appellate court decisions cited in *Hagee* as applying a broader view of res judicata deviate from or criticize the "cause of

action" test of the first Restatement. Rather, they simply apply the test in a more flexible manner, stressing substantial overlap in the proofs as opposed to the technical identity of all the elements of the various causes of action.

Here, in contrast to *Hagee*,[5] there is a significant divergence in the facts necessary to sustain Frier's two claims. Accordingly, the Illinois courts would not find claim preclusion in the case at bar.

## II

It was established at Frier's replevin trial that the City police caused various service station owners to tow four of Frier's cars and, in lieu of a traffic citation, left written notice of the reason for the towing and the whereabouts of the cars. Frier eventually recovered two of his cars. Thus, the replevin action, and this action, concern only two of the cars. Frier could have recovered one of those cars immediately by paying a $10.00 towing fee to the owner of the service station that towed the car. However, Frier was informed that any further delay in reclaiming the car would result in a $2.50 per day storage charge. *See* Appellee's Appendix at 38–42 (reprinting Transcript). Frier was free to reclaim the other car without paying any fee. *See id.* at 34–38. I would hold that, on the basis of these uncontested facts, the City was entitled to summary judgment against Frier's procedural due process claim.

The parties do not contest that the deprivation of an automobile, even if temporary, is a deprivation of "property" within the meaning of the fourteenth amendment. *See Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir.1982). Nor do they contest that, given the necessity of preserving the government's ability to enforce traffic regulations, the government need not provide any notice or hearing prior to seizing an illegally-parked car. *See id.* The sole issue on appeal is whether notice of the reasons for the towing, the availability of a State tort suit, and the ability to reclaim both towed cars in the interim by paying a

nominal towing charge are sufficient postdeprivation "process" to satisfy the fourteenth amendment. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

In some circumstances, the federal courts have held that the availability of a postdeprivation State tort suit is itself sufficient process. *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt*, 451 U.S. at 527, 101 S.Ct. at 1908; *Brown v. Brienen*, 722 F.2d 360 (7th Cir.1983); *Wolf-Lillie v. Sonquist*, 699 F.2d 864 (7th Cir.1983). On the other hand, where the State tort remedy is deemed speculative, incomplete, or overly time-consuming, the federal courts have held such process to be insufficient. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–37, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982); *Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir.1984), *cert. dismissed,* —— U.S. ——, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). Rather than attempt to categorize the facts at bar as most analogous to any one line of cases, the appropriate course of action is to focus on the policies that underlie these decisions.

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). Thus, the object of "process" is to minimize substantive unfairness or mistakes by enabling citizens to contest the deprivation, *id.* at 259–60, 98 S.Ct. at 1050, "at a meaningful time and in a meaningful manner," *Logan*, 455 U.S. at 437, 102 S.Ct. at 1158 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In determining what process is due, the court must weigh the individual's interest in procedural safeguards that minimize the

---

**5.** In *Hagee,* 729 F.2d at 515, both lawsuits protested a city's attempt to prevent the completion of the plaintiffs' construction project. The first suit proceeded on a broad estoppel theory, which could be viewed as including within its purview the various procedural and substantive constitutional theories alleged in the second

suit. Here, the initial suit was a more narrow substantive claim and the second suit alleged purely procedural rights. Thus, to define these two claims as substantially similar would be to bridge what is perhaps the most fundamental distinction in American law: that between substance and procedure.

chance of substantive unfairness or mistakes against the government's competing interest in minimizing the costs of enforcing its regulations. The template that guides such a balancing analysis was announced by the Supreme Court in *Eldridge*, 424 U.S. at 319, 96 S.Ct. at 893. *Cf. City of Connersville*, 737 F.2d at 696 (*Eldridge* test is the "standard test of procedural adequacy under the due process clause").

The *Eldridge* test requires the court to consider three distinct factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903. Applying this test to the case at bar, I conclude that the State replevin suit by itself is insufficient process. The dispositive question, therefore, is whether the procedures notifying Frier of the seizure and allowing him immediately to recover his cars can be considered the additional postdeprivation process necessary to satisfy the fourteenth amendment.

Turning to the first prong of *Eldridge*, the private interest affected by the seizure is substantial. A person's livelihood or ability to enjoy the amenities of life may depend on uninterrupted possession of an automobile. Even a temporary deprivation may inflict substantial hardship. *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1342–43 (9th Cir.1977).

As for the second prong, this court has indicated that the risk of an erroneous deprivation in this context is minimal because "[t]he determination that a car is illegally parked is pretty cut and dried." *Sutton*, 672 F.2d at 646. I disagree. The City's ordinance prohibits in general terms the "obstruct[ion] ... [of the] free passage or proper use of the public of any street." Appellee's Appendix at 100 (reprinting Vandalia, IL, Ordinance 6.05). Whether an individual violates this ordinance requires an assessment of fault and the credibility of witnesses, issues which the Supreme Court has indicated are too likely to be resolved erroneously in the absence of the extensive procedural safeguards that attend trial-type hearings. *See Eldridge*, 424 U.S. at 343–45, 96 S.Ct. at 907; *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 617, 94 S.Ct. 1895, 1905, 40 L.Ed.2d 406 (1974).

Moreover, the application of the cost-benefit analysis of *Eldridge* must be informed by an underlying theory of value. The due process clause was not meant to codify some arid theory of utilitarianism. Rather, the requirement of accuracy and minimum procedural safeguards follows from the fundamental assumption that government officials will tend to abuse unfettered discretion to oppress individuals; procedural safeguards place a check on such discretion and help preserve the substantive liberties and inherent dignity of the individual. *See* Rubin, *Due Process and the Administrative State*, 72 Calif.L.Rev. 1044, 1102–04, 1136–44 (1984); Mashaw, *The Supreme Court's Due Process Calculus for Administrative Adjudication in Mathews v. Eldridge: Three Factors in Search of a Theory of Value*, 44 U.Chi.L.Rev. 28 (1976). In sum, to allow the government to seize property pursuant to "cut and dried" traffic regulations without the availability of extensive trial-type procedures is to invite the kind of abuses of power that the due process clause was meant to prevent.

There is no question that the government here provided such procedures in the form of a replevin action, *see* Ch. 110, §§ 19-101–28, and a broad waiver of sovereign immunity, *see* Ill. Const. art. 13, § 4. The more difficult question is whether these procedures were sufficiently prompt to lend adequate protection against unwarranted invasion of individual property rights. Normally, to consign a due process petitioner to postdeprivation tort remedies is to consign him to years of potentially fruitless and expensive litigation. A replevin action, however, provides for expe-

dited procedures in the form of a preliminary hearing and replevy of property pending a final determination of possessory rights. Ch. 110, §§ 19–105–07. Thus, Frier was able to receive a trial and judgment two months after he filed his first replevin complaint. Furthermore, had Frier prevailed, he would have received adequate redress for the injury, including damages caused by the wrongful seizure as well as repossession.[6] *Cf. Logan*, 455 U.S. at 436–37, 102 S.Ct. at 1158 (postdeprivation tort suit inadequate process because it could not "make the complainant entirely whole").[7]

Nevertheless, the deprivation of an automobile is too serious a burden on the individual to allow the government to retain possession in the interim at its infettered discretion. There must be some more immediate procedural safeguards that reduce this burden or that provide a prompt preliminary review to ensure that the government action was not arbitrary. *Accord Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir.1982); *Stypmann*, 557 F.2d at 1338; *Grant v. City of Chicago*, 594 F.Supp. 1441 (N.D.Ill.1984).

In assessing the timing and content of this additional process, it is necessary to consider the third prong of *Eldridge*: the resulting burden on the government. This includes the monetary costs of the additional process as well as (1) the negative impact on the ability to administer or enforce the government regulations and (2) the importance of those regulations. *See Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903; *Goichman*, 682 F.2d at 1324–25; *Sutton*, 672 F.2d at 646–47; Rubin, *supra*, 72 Calif. L.Rev. at 1143–44.

The additional process afforded Frier was notice of the seizure and whereabouts of his car as well as his ability to reclaim the cars immediately for a nominal $10.00 towing charge. Although the ability to reclaim the cars might not be considered "process" in the traditional sense of the term, it is the functional equivalent of posting bond, which the Fifth Circuit has held to be adequate postdeprivation process in this context where the bond allows the petitioner immediately to reclaim his towed cars while securing his appearance in the State court to challenge the towing. *Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir.1984). Indeed, a minimal towing charge is more favorable to the petitioner than a bond because the bond costs more and secures the petitioner's payment of a potentially large loss.[8] In the case at bar, Frier could at most lose $10.00 if he did not prevail; if he did prevail, he could regain the towing charge as damages.

6. The remedy for replevin includes "damages for the detention of the property" as well as injunctive relief to repossess the property. *See* Ch. 110, § 19–125. The courts have stressed that the Replevin Act was "intended to provide full indemnity for damage suffered." *Puritan Finance Corp. v. Gumdrops, Inc.*, 101 Ill.App.3d 888, 57 Ill.Dec. 270, 273, 428 N.E.2d 950, 953 (1981). Thus, Frier would be able to collect compensation for the reasonable rental value of the property for the period of the seizure, *see Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill.App.3d 254, 66 Ill.Dec. 902, 904–05, 443 N.E.2d 1065, 1067–68 (1982), as well as for any towing costs incurred.

7. It is not clear whether punitive damages are recoverable in a replevin action. *But cf. Miller v. Bank of Pecatonica*, 83 Ill.App.3d 424, 38 Ill.Dec. 658, 661, 403 N.E.2d 1262, 1265 (1980) (affirming award of punitive damages for wrongful replevin). Yet, this does not render the tort remedy inadequate within the meaning of *Logan* because the Court in *Parratt*, 451 U.S. at 543–44, 101 S.Ct. at 1916–17, found a State tort suit adequate despite a prohibition of punitive damages. In any event, the issue is moot. Even if Frier were allowed to pursue a section 1983 action, he would not be able to collect punitive damages because the only defendant is the City, which is immune from such damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

8. In *Breath*, 729 F.2d at 1011, the appearance bond that would allow the claimant to recover his car immediately without payment of towing charges had to be sufficient to satisfy the maximum amount of all potential charges and fines. Even if the claimant eventually prevailed, the bond would probably cost the claimant more than $10.00—whether in the form of fees to the bonding company or the hardship of foregoing a large cash bond for some time. *See generally* 5 Fed.Proc. *Bonds, Civil Fines, and Forfeitures* §§ 10:1–10:9 (1982).

The effect of the minimal towing charge is to reduce dramatically the possibility that the petitioner will suffer a serious loss: what was once a potentially devastating loss of personal property pending litigation is now, at worse, a loss of $10.00. To be sure, if the petitioner cannot afford this fee, the potential loss will again be severe. But where, as here, there is no evidence of indigency or financial hardship, I would hold as a matter of law that a $10.00 fee is nominal. As for the government's interest, the "procedure" comes at no cost to the City's fisc or its ability to enforce traffic laws.

I would hold, then, that notice of towing, the availability of an expedited State tort suit that can make the petitioner whole, and the ability to reclaim the towed cars immediately at a cost of $10.00 together constitute adequate postdeprivation process as long as the $10.00 fee does not present a financial hardship. This holding would not necessarily conflict with recent decisions of other courts requiring more immediate and elaborate postdeprivation process. *See Goichman,* 682 F.2d at 1323 (hearing required at least forty-eight hours after towing); *Stypmann,* 557 F.2d at 1344 (hearing for indigents within five days of the towing is "too long"); *Grant,* 594 F.Supp. at 1448–50 (hearing forty-eight hours after seizing car with ten outstanding traffic tickets not sufficient process unless hearing officer is impartial). More elaborate process may well be required in those cases because the towing practices of the various municipalities were more burdensome on the respective petitioners: immediate reclamation required significantly more than $10.00 and the litigants had standing to represent indigents who could afford no fee. We need not reach such troublesome issues in the case at bar.

I would find, as a matter of law, no procedural due process violation under these facts. Accordingly, I concur with the majority's decision to affirm the judgment below.